IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAWRENCE G. RUPPERT,
on behalf of himself and on
behalf of all others similarly
situated,

                      OPINION AND ORDER

                Plaintiff,

                      08-cv-127-bbc

     v.

ALLIANT ENERGY CASH BALANCE
PENSION PLAN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This proposed class action under the Employee Retirement Income Security Act (ERISA for short), 29 U.S.C. §§ 1001-1461, is before the court on the motion of defendant Alliant Energy Cash Balance Pension Plan to dismiss plaintiff Lawrence G. Ruppert's first amended complaint on the ground that plaintiff has not exhausted the remedies available to him under the terms of defendant Plan. Plaintiff denies that exhaustion is required in a case such as his, where he is challenging a benefit plan's compliance with ERISA rather than an act or omission allegedly in violation of the plan.

      It is within the court's discretion to require exhaustion. I conclude that in this case,

1

exhaustion would not advance any of the purposes for which it is required in other cases, that it is highly questionable whether it would be of any use, given the plan administrators' refusal to adopt the method for calculating accrued benefits that has allegedly been mandated by the Internal Revenue Service and the courts, and that it would serve only to delay the resolution of the issues at stake.  Therefore, I will exercise my discretion to relieve plaintiff of the requirement to exhaust and deny defendant's motion to dismiss the first amended complaint.

Plaintiff's first amended complaint is the operative complaint and an odd duck.  Were it not labeled as an amended complaint, one would think it was a brief in opposition to that motion.  It is replete with legal argument and sparse on facts.  Picking through the excess verbiage, I can find certain relevant factual allegations that I have set out below.

In addition, I have included two relevant paragraphs of the Plan.  Although the Plan was not attached to plaintiff's complaint, defendant submitted it as an attachment to its motion to dismiss.  The general rule is that when additional evidence is attached to a motion to dismiss, the court must either convert the motion to one for summary judgement or disregard the evidence.  In this instance, however, because the Plan provisions are relevant to the discussion of defendant's motion and he has referred to provisions of the Plan in his complaint, I will take into consideration the document attached to defendants' motion to dismiss.  <u>Wright v. Associated Insurance Companies Inc.</u>, 29 F.3d 1244, 1248 (7th Cir.

2

1994) ("documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"); see also 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002) (quoting Wright).

Defendant has also submitted the affidavit of Christopher J. Lindell, Chairperson of the Alliant Energy Employee Total Compensation Committee that administers the Plan, in which Lindell makes certain averments.  Among them are Lindell's assertions that the Committee has not denied any benefits claim by plaintiff and that it would consider a claim for benefits if one was to be filed.  I will not consider this affidavit.  Defendant has neither suggested any exception to the general rule that matters outside the pleadings are not proper for consideration on a motion to dismiss nor moved to convert this motion to one for summary judgment.

In summarizing plaintiff's allegations, I am accepting as true only his well-pleaded factual allegations and drawing all inferences in favor of plaintiff.  Mallett v. Wisconsin Div. of Vocational Rehabilitation, 130 F.3d 1245, 1249 (7th Cir. 1997).

ALLEGATIONS OF FACT

Plaintiff is a Wisconsin resident and former employee of Alliant Energy Corporation or one of its affiliates that was part of the Alliant Energy Cash Balance Pension Plan.  He remains a participant of the Plan because the Plan owes him additional benefits that have

3

not yet been paid him.

At all relevant times, the Plan was an employee pension benefit plan and a defined benefit plan within the meaning of 29 U.S.C. §§ 1002(2)(A) and 1002(35). The Plan sponsor and de facto plan administrator is Alliant Energy Corporate Services, Inc.

While plaintiff was employed by Alliant, he accrued pension benefits under the Plan, which is a defined pension plan of the "cash balance" variety, in which a hypothetical account is established for each participant. The Plan had been converted to this format effective January 1, 1998. Participants in the Plan are entitled to the greater of their cash balance benefit or a "grandparent benefit" calculated under a pre-existing formula, generally based on the employee's number of years of service and the highest three years of salary. (The grandparenting is dynamic for the ten-year period from August 1, 1998-August 1, 2008; thereafter, the grandparented benefit is frozen.)

Under the terms of the Plan, participants accrue a "benefit credit" (or "pay credit") equal to 5% of "pension pay" (defined as base pay and overtime, plus selected incentives and bonuses paid during the year), together with the right to an interest credit (or "interest crediting rate") that is equal to the greater of (I) 4%, or (ii) 75% of the rate of return generated by the Plan's Trust for that calendar year and is to be applied to their notional account balances each December 31. Plan § 3.5(a).

Under the Plan, participants accrue the right to receive future interest credits on their

4

account balances through normal retirement age (age 65) at the same time as they accrue the corresponding pay credits. As a result, the Plan is a "frontloaded" interest crediting plan. In such a plan, future interest credits are not conditioned upon future service. If an employee terminates his employment and defers distribution to a later date, interest credits will continue to be credited to that employee's hypothetical account.

The Plan's interest crediting rate is an unusually valuable, above-market equity-based crediting rate that does not exist outside the Plan and cannot be obtained in the market. Participants are guaranteed that they will receive no less than 4% annually, with the potential for 75% of the Plan's returns on its own investments. Since 1998, the crediting rate has returned double-digit or very high single-digit returns, consistently exceeding the applicable discount rate (the 30-year Treasury rate). Plan § 1.2(b)(1).

Plaintiff left his employment with Alliant before reaching the normal retirement age of 65. He filed a written claim, seeking his Plan benefit in the form of a single-sum distribution, without reservation. In response, the Plan's administrator (the Committee) granted his request in part and denied it in part, without telling him of the partial denial. The Committee paid plaintiff an amount equal to his notional Plan "account balance"; it did not tell him it was not paying him his full Plan accrued benefit. (Plaintiff defines "accrued benefit" as that portion that the courts have held must be paid to insure actuarial equivalence. He cites Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d

5

755 (7th Cir. 2003), as support for his definition.)

In 1996, the IRS issued Notice 96-8, which explicitly instructed administrators of cash balance funds that they must use a particular calculation known as the "whipsaw" in issuing lump sum distributions to participants leaving a plan before their normal retirement age. Plans were required to determine the annuity payable at age 65 to which the participant is entitled under the plan and calculate the actuarial equivalent of that annuity in present dollars. In other words, the procedure was first to project the balance of the employee's hypothetical account to normal retirement age and then pay the employee the present value of the calculated amount. Cash balance plans are excused from including a whipsaw calculation only when the plan uses as its interest crediting rate the 30-year treasury rate or a functionally equivalent rate approved by the IRS. Under such a calculation, when the projection rate is greater than the statutorily prescribed discount rate, the actuarial equivalent of the normal retirement benefit (what the participant is actually owed) will be more than the notional account balance. Unless the higher amount is paid out, the Plan is in violation of 29 U.S.C. § 1053(a).

Under Notice 96-8, a plan is required to set forth the method for determining the rate to be used to project the value of a participant's benefit at age 65 to get a fair estimate of the value of the future interest credits participants would have received at that age had they left their benefits in the plan until then. However, defendant Plan specified that the required

6

projection would be made using the same 30-year treasury bond rate used to discount the projected age 65 benefit back to present value, even though the Plan's actuaries have stated that the Plan's crediting rate would significantly exceed the return on the 30-year treasury bill. The Plan preamble says that the Plan "incorporates cash balance features, including an intent to pay benefits in a single lump sum equal to a Participant's Cash Balance Account." Plan § 1.1.

The Committee must have known since before 1998 that it is prevented by law from defining a participant's pre-age 65 lump sum as equal to the balance of his notional account balance. Therefore, when the Committee paid plaintiff his portion of his claim for benefits, it would have known that it was denying plaintiff the entirety of his accrued benefit and that it was using an illegal method to calculate the lump sum payout.

Although both the Court of Appeals for the Eleventh Circuit and the Court of Appeals for the Second Circuit issued decisions interpreting the IRS's directives on calculating lump-sum cash-outs, Lyons v. Georgia-Pacific Corp., 221 F.3d 1235, 1237-38 (11th Cir. 2000), and Esden v. Bank of Boston, 229 F.3d 143, 164-173 (2d Cir. 2000), the Committee did not change and has not changed its method of calculating the amounts payable to plan participants who terminate their employment before their normal retirement age. When the Court of Appeals for the Seventh Circuit reached a similar decision in the Xerox case, 338 F.3d 755, the Committee has made no changes to its method of calculation. The Committee

7

made no changes following a March 2002 report by the Inspector General of the Department of Labor saying that ERISA was violated when plan sponsors used the 30-year treasury rate for determining an accrued benefit from a plan that allows participants to select hypothetical investments and then set each participant's interest credit rate at the rate of return of the hypothetical investments.  If plaintiff's benefit had been calculated using one of the two permissible methods identified in Berger, 338 F.3d at 760, plaintiff would have received an additional payment beyond the nominal value of his then-current account balance.

Plaintiff is suing on his own behalf and on behalf of all other similarly situated Plan participants and beneficiaries.  His proposed class is the following:

> All persons who, since January 1, 1998, accrued under the terms of the Alliant Energy Cash Balance Pension Plan (the "Plan"), a vested or partially vested interest in a notional account balance established in their name by the Plan, including but not limited to all persons who, ast any time between January 1, 1998 and August 17, 2006, either (a) received a lump sum distribution of his or her cash balance formula benefit and/or (b) received any form of distribution calculated under the Plan's (or a related, prior plan's) prior formula after that benefit was determined to be more valuable than their benefit calculated under the Plan's cash balance formula [sic] all persons who received a lump sum distribution; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

(Obviously, something is missing after the word "formula" in the third to the last line; whether it is merely a semi-colon or an entire sentence I cannot determine.)

Article 11-1 of the Plan provides in relevant part:

8

Any person entitled to benefits must file a written claim with the Administrator on forms provided by the Administrator. Such application shall include all information and evidence the Administrator deems necessary to properly evaluate the merit of and to make any necessary determinations on a claim for benefits. Unless special circumstances exist, a Participant shall be informed of the decision on his claim within 90 days of the date all the information and evidence necessary to process the claim is received.

Article 11-3 provides in relevant part:

A claimant may file a written appeal of a denied claim with the Administrator within 60 days after receiving written notice that his claim has been denied, including any comments, statements or documents he may wish to provide. . . . Within 60 days after the submission of the written appeal, the Administrator shall render a determination on the appeal of the claim in a written statement. The written decision shall contain the reason or reasons for the decision and refer to specific Plan provisions on which the decision is based. . . . The determination rendered by the Administrator shall be binding upon all parties.

Article 10-3 provides that

Notwithstanding any other provisions of this Plan, a fiduciary or other person shall not be relieved of any responsibility or liability for any responsibility, obligation or duty imposed upon such person pursuant to [ERISA], as amended from time to time.

OPINION

Although this suit raises potentially complex issues about the legal requirements for calculating accrued benefits, the only issue before the court at this time is whether plaintiff is required to exhaust his Plan remedies before he brings suit. Defendant contends that participants have a legal duty to exhaust any remedies required by the plan in which they

9

participate, although it concedes that the court has discretion in determining whether this is true in any particular case. Plaintiff contends that whatever the Plan requires as a general rule, the court should not require exhaustion in this case for several reasons. First, he has already exhausted any remedies available to him; second, exhaustion would be futile when he is challenging the Plan's compliance with statutory and administrative requirements and not a particular award of benefits to him; and requiring exhaustion would not serve any of the purposes that make it proper in other cases.

The law in this circuit is that exhaustion of remedies under ERISA is a matter within the discretion of the district court. Kross v. Western Electric Co., Inc., 701 F.2d 1238, 1244 (7th Cir. 1983). At the same time, the court of appeals has been a vigorous proponent of exhaustion in ERISA cases. In Kross, it expressed its agreement with the reasons for the requirement set out by the Court of Appeals for the Ninth Circuit:

> to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used. Moreover, the trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA, sections 401 through 414, 29 U.S.C. §§ 1101-1114, and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.

Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir. 1980). See also Gallegos v. Mt. Sinai

10

Medical Center, 210 F.3d 803, 808 (7th Cir. 2000) ("The policy [of requiring exhaustion in ERISA cases] furthers the goals of minimizing the number of frivolous lawsuits, promoting non-adversarial dispute resolution, and decreasing the cost and time necessary for claim settlement" and allows the compilation of a complete record in preparation for judicial review).

In accordance with this policy, the court of appeals has upheld the requirement of exhaustion of ERISA remedies even when the issue of benefits is tied up with an employee's claim that her employer fired her in order to avoid paying short-term benefits to her. Lindemann v. Mobil Oil Co., 79 F.3d 647, 649 (7th Cir. 1996); Kross, 701 F.2d 1238. On the other hand, it has upheld a decision to the contrary involving the same kind of claim, Salus v. GTE Directories Service Corp., 104 F.3d 131 (7th Cir. 1997), noting that the difference between the results in Salus and in other cases such as Lindemann "affirm[s] that it is within the discretion of the district courts to require exhaustion of administrative remedies." Id. at 138.

Before I turn to plaintiff's argument that this is not a case in which to require exhaustion, it is necessary to address plaintiff's contention that the court need not even reach that issue. First, he argues correctly that it is defendant's burden to show that he did not exhaust his remedies, rather than his burden to show that he did. Defendant has not made the showing. However, given the ultimate resolution of its motion, its failure is

11

immaterial.

Second, plaintiff contends that even if it were his burden to show exhaustion and even if this were a case in which exhaustion is required, he has shown that he exhausted his Plan remedies fully by making a written claim for benefits.  Doing so, he says, triggered the Plan's notification and procedural duties under ERISA to inform him both that it was paying him his benefits in a manner that the courts considered illegal and that he needed to be aware that he had something to contest.  The Plan did not do this; instead, it paid him an amount equal to his notional Plan "account balance," but failed to tell him it was denying him his full accrued benefit.  This argument is not compelling in the absence of any showing that plaintiff called attention to the particular claim he is asserting here, which is that the Committee is not complying with statutory directives and case law in using the method it does for calculating accrued benefits.

More persuasive is the argument that exhaustion would be futile in light of the nature of his challenge.  Surely, plaintiff argues, the Committee has known about the directives and the case law that mandates a different calculation from the one that it has been employing, yet it has refused to change anything about its methods.  Plaintiff's allegations about the Committee's knowledge are more speculative than factual but I agree with him that it does not seem reasonable that the members of the Committee would be unaware of the cases in which courts have reached very specific decisions about the legality of certain financial

12

practices that the Committee allegedly practices. If these cases and the potential financial impact of ignoring their results have not effected change in more than eight years, it is highly unlikely that requiring plaintiff to file a claim for additional benefits will be more successful.

Moreover, this case is not one in which requiring exhaustion would advance the strong policies that underlie the exhaustion doctrine and that the court of appeals adopted in Kross, 701 F.3d at 1244-45. That is, it is not one in which a more fully developed administrative record would assist the court in the resolution of the case because the issue is primarily if not exclusively a legal one; hearing the case would not affect adversely the consistent treatment of benefit claims or minimize the costs of claim settlements. In fact, because the issue is one that will have to be resolved in court eventually, costs will be reduced by a prompt court resolution. The issue raised is not a frivolous one on its face. Finally, given the importance of the issue and its legal nature, keeping the case here cannot be said to represent undue judicial intervention in the management of ERISA plans.

It is worth noting that a number of district courts in this circuit have chosen to retain jurisdiction in ERISA cases similar to this one. E.g., Donaldson v. Pharmacia Pension Plan, 435 F. Supp. 2d 853, 859-863 (S.D. Ill. 2006) (finding exhaustion futile in case challenging plan's calculations of accrued benefits in light of Berger v. Xerox Corp. Retirement Income Guaranty Plan, 338 F.3d 755, 758 (7th Cir. 2003), where defendants conceded that plaintiffs had received all benefits to which they were entitled under Plan and

13

purposes underlying exhaustion requirement would not be served by sending case back); Eaton v. Onan Corp., 117 F. Supp. 2d 812, 839 (S.D. Ind. 2000) (finding exhaustion would be futile and finding no reason for requiring it in case challenging benefit plan on ground that rate of benefit accrual declined with employee's age in violation of ERISA); Huppeler v. Oscar Mayer Foods Corp., 1993 WL 730699 (W.D. Wis. 1993) (not requiring exhaustion in case challenging offsets of pension benefits by certain types of workers' compensation benefits).

After reviewing the allegations of the complaint, the nature of the issue at stake, the likelihood that exhaustion would be futile, the absence of any indication that requiring exhaustion would promote any of the purposes for imposing the requirement and the likely prejudice to plaintiff in requiring him to pursue an unattainable remedy, I will exercise my discretion to relieve plaintiff of the obligation of exhausting his remedies under defendant Plan.

ORDER

IT IS ORDERED that the motion of defendant Alliant Energy Cash Balance Pension Plan to dismiss plaintiff's first amended complaint on the ground that plaintiff Lawrence G. Ruppert has not exhausted the remedies available to him under the terms of defendant Plan

is DENIED.

Entered this 22nd day of August, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

15