IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAWRENCE G. RUPPERT and
THOMAS A. LARSON,[1]
on behalf of themselves and on
behalf of all others similarly situated,

                Plaintiffs,

      v.

ALLIANT ENERGY CASH BALANCE
PENSION PLAN,

              Defendant.

OPINION and ORDER

08-cv-127-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a proposed class action brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, in which plaintiffs Lawrence G. Ruppert and Thomas A. Larson allege that defendant Alliant Energy Cash Balance Pension Plan improperly calculates benefits and underpays participants such as plaintiffs using the improper calculation. Now before the court is plaintiffs' motion to certify a class and appoint class counsel.

---

[1]In an order entered November 19, 2008, I granted plaintiff Lawrence G. Ruppert's motion to add Thomas A Larson as an additional named plaintiff and proposed class representative. Dkt. #47. I have amended the caption accordingly.

A couple of minor issues require attention first, however.  First, defendant has filed a motion for leave to file a second amended answer in response to plaintiffs' addition of a new named plaintiff.  Plaintiffs do not oppose the motion, although they suggest that the new defense might be futile.  I understand plaintiffs' position to be that they will take up that dispute at a later time.  Therefore, I will grant defendant's motion.  The proposed second amended answer filed as dkt. #57-1 will be the operative answer.

Second, in the context of disputing a motion to compel, defendant moved for leave to file a responsive brief to a supplemental brief of plaintiffs.  The purpose of defendant's motion is not clear; it identifies no new dispute and the motion to compel had been decided 11 days earlier.  Therefore, defendant's motion for leave to file a responsive brief will be denied as unnecessary.  To the extent defendant finds that it has new discovery-related problems, it should file a new motion on that matter.

Turning to plaintiffs' motion to certify a class, that motion will be granted.  Despite defendant's objections, I conclude that plaintiffs have made a showing that they satisfy the requirements of Rule 23(a).  The severance agreements plaintiffs signed pose no threat to the typicality or adequacy of the class because they fail to raise an arguable defense to plaintiffs' claims; whether the claims of plaintiff Larson and other class members are vulnerable to a statute of limitations defense is not a problem because the proposed subclasses address those concerns adequately; and plaintiffs' relative lack of interest and

2

independence in this case are no obstacle to a finding that they are nonetheless adequate representatives of the class in light of their counsel's qualifications. In addition, I conclude that because plaintiffs seek declaratory relief, the class action is maintainable under Rule 23(b)(2). The scope of the subclasses that I will certify will be slightly narrower than that proposed by plaintiffs because plaintiffs have failed to explain why beneficiaries of estates who could receive lump sum payouts should be part of this action. Finally, because neither party addresses the question whether class members should receive notice in this case, the parties will be asked to present their positions on that matter to the court.

From the affidavits submitted by the parties, I find the following facts to be undisputed for the purpose of deciding plaintiffs' motion for class certification.

## UNDISPUTED FACTS

### A. The Plan

Defendant Alliant Energy Cash Balance Pension Plan is a "defined benefit pension plan." Its sponsor is Alliant Energy Corporate Services, Inc. Since January 1, 1998, the plan has been a "cash balance" plan, under which participants' benefits are reflected in hypothetical ("notional") accounts. The plan applies a "benefit credit" and an "interest credit" to participants' notional account balances each December 31. The interest credit is equal to the greater of 4% of the balance or 75% of the rate of return generated by the plan's

trust for the calendar year.   A participant's future interest credits under the plan accrue at the same time that corresponding benefit credits accrue, regardless whether the participant is still working for the plan's sponsor.   In other words, if a participant terminates employment but defers distribution under the plan, interest credits continue to be credited to the participant's notional account.

Participants may seek a pre-retirement-age lump sum payout of their pension benefits. To calculate the proper value of a lump sum payout from a cash balance plan such as defendant's, generally the balance of the participant's notional account is "projected forward" to the partipant's normal retirement age to estimate the interest credits that would have been added to the account and then "converted back" to the present value using a set interest rate, the 30-year Department of Treasury bond rate.  (This calculation is known as the "whipsaw calculation.")   Under the plan at issue, however, the balance was projected forward using not its interest crediting rate, but rather using the same 30-year Treasury bond rate used to convert the account back to the present value.   The result of this method was that the value of a lump sum payout was always equal to the current balance of a participant's notional account balance.

B.   The Plan's Lump Sum Payouts to Plaintiffs

Plaintiffs Lawrence Ruppert and Larson Thomas participated in the plan.  Plaintiff

4

Ruppert worked for Alliant Energy Corporate Services, Inc. from January 29, 2001 to June 24, 2005, when Alliant eliminated his position.  Plaintiff Ruppert received a severance package in exchange for signing a severance agreement and release that stated that plaintiff Ruppert agreed to "release all known and unknown . . . matters in law, in equity, in contract" that he could pursue against Alliant and its "affiliates" and "agents."  It also stated that plaintiff Ruppert would have no rights under any pension or benefit plan of Alliant's except that he would "retain any vested rights under all qualified retirement plans of [Alliant's] in which [plaintiff Ruppert] is a participant and all rights associated with such benefits, as determined by the official terms of those plans."  After signing this, plaintiff Ruppert applied for and received a lump sum benefit from the plan in accordance with the plan's method of calculating the payout amount.

Plaintiff Larson started working for a predecessor of Alliant in 1981 and worked for Alliant until December 31, 1999, when Alliant terminated his employment.  He accepted a severance package in exchange for signing a severance agreement and release whose wording differs slightly from plaintiff Ruppert's.  Plaintiff Larson agreed to release "all claims, liabilities, demands and causes of action whether known or unknown . . . arising out of or in any way connected with [his] employment" that he could pursue against Alliant and its "affiliates" and "agents."  The release states that it "does not apply . . . to any claims related to pension or retirement benefits under [ERISA]."

5

C.  <u>Plaintiffs' Interest in this Case</u>

Plaintiff Ruppert decided to bring this action after receiving an email from Eli Gottesdiener (now his counsel) stating that his benefits "may have been underpaid."  He does not know how a cash balance plan works; he conducted no independent investigation to determine if he had a valid claim; and he does not know what interest rate the plan allegedly should have used to calculate his benefit.  Plaintiff Ruppert did not see the amended complaint until months after it was filed and has stated that the truth of certain statements in the amended complaint are "of no significance" to him and not his concern. When asked what value he adds to the case, plaintiff Ruppert stated, "a human being."

Plaintiff Larson agreed to be added as a named plaintiff after he received an email from Gottesdiener suggesting that his benefits may have been improperly calculated. Plaintiff Larson does not know how a cash balance plan works, he conducted no independent investigation into whether he had a valid claim and he does not know what rate the plan allegedly should have used to calculate his benefit.  Plaintiff Larson did not see the amended complaint until months after it was filed and does not know whether all the allegations in it are true.

OPINION

Plaintiffs' proposed class consists of:

6

> All persons who, since January 1, 1998, accrued under the terms of the Alliant
> Energy Cash Balance Pension Plan (the "Plan"), a vested or partially vested
> interest in a notional account balance established in their name by the Plan,
> including but not limited to all persons who, at any time between January 1,
> 1998 and August 17, 2006, either (a) received a lump sum distribution of his
> or her cash balance formula benefit and/or (b) received any form of
> distribution calculated under the Plan's (or a related, prior plan's) prior
> formula after that benefit was determined to be more valuable than their
> benefit calculated under the Plan's cash balance formula . . . ; and the
> beneficiaries and estates of such persons and alternate payees under a
> Qualified Domestic Relations Order.

In addition, plaintiffs have proposed subclasses dividing the class into two groups: those

whose lump sum was calculated on or after February 29, 2002 and those whose lump sum

was calculated between January 1, 1998 and February 28, 2002.

Before the court may certify a class, plaintiffs must satisfy the requirements of both

Rule 23(a) and (b).  Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir. 1992).  First,

plaintiffs must show that they may be allowed to sue as representative parties on behalf of

others by meeting the four prerequisites laid out in Rule 23(a):  (1) numerosity, that "the

class is so numerous that joinder of all members is impracticable"; (2) commonality, that

"there are questions of law or fact common to the class"; (3) typicality, that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class"; and

(4) adequacy, that "the representative parties will fairly and adequately protect the interests

of the class."  Fed. R. Civ. P. 23(a).  Next, plaintiffs must show that the proposed class

action "may be maintained" as one of the four types of class actions permitted under Rule

23(b).  Fed. R. Civ. P. 23(b).

This court makes an initial assessment whether proposed class representatives have standing and whether the proposed class is "precise, objective and presently ascertainable," an implicit requirement in determining whether a class may be certified.  E.g., Blihovde v. St. Croix County, 219 F.R.D. 607, 616 (W.D. Wis. 2003).  However, in this case neither the proposed class members' standing nor the ascertainability of the proposed class is in dispute and neither appears to be a problem.

## A.  Numerosity and Commonality

There is little doubt that plaintiffs satisfy the numerosity and commonality requirements of Rule 23(a).  To support their showing of numerosity, plaintiffs submit evidence that the proposed class has at least 200 members with the actual numbers likely closer to 800 members; even plaintiffs' proposed subclasses include at least 100 members each, with the actual number likely reaching around 400 each.  Defendant does not dispute these numbers.  I am satisfied that the class or even the subclasses are sufficiently numerous to make joinder impracticable.

As for commonality, "a single common issue is sufficient to satisfy this requirement." Blihovde, 219 F.R.D. at 616 (citations omitted),  In this case, the central issue is one that is common to all members of the proposed class: whether defendant's method for

determining the value of their pre-retirement lump sums was illegal.  Such a showing is more than sufficient to establish commonality.

## B.  Typicality and Adequacy

The issues most heavily disputed between the parties implicate both typicality and adequacy.  In particular, defendant argues that plaintiffs' claims are not typical and plaintiffs are not adequate class representatives in light of two defenses that defendant plans to assert: plaintiffs have released their claims by signing severance agreements and the statute of limitations bars claims brought by plaintiff Larson and some of the other class members.  In addition, defendant challenges plaintiffs' adequacy as class representatives by pointing to their lack of interest and knowledge of the case and lack of independence from their counsel. (In passing, defendant states that its defense that plaintiffs failed to exhaust also creates problems for typicality and adequacy; however, I have already concluded that plaintiff Ruppert's failure to exhaust would not result in dismissal of his case because it would not advance any of the purposes for which dismissal is usually required when a plaintiff fails to exhaust his administrative remedies.  The same reasoning undermines defendant's attempt to block certification on the grounds of its defense of failure to exhaust.)

## 1.  Statute of limitations

Defendant contends that its statute of limitations defense stands in the way of class certification because the proposed class includes both members who received lump sum payouts more than six years before the date of filing and members who received their payouts after that time.  According to defendant, that means that some class members' claims, including plaintiff Larson's, are susceptible to Wisconsin's six-year statute of limitations, while other class members' claims, including plaintiff Ruppert's, are not.

However, plaintiffs have proposed a simple solution to these concerns:  the class may be divided into subclasses, with plaintiff Ruppert representing all class members whose lump sum was calculated on or after February 29, 2002 and plaintiff Larson representing all class members whose lump sum was calculated between January 1, 1998 and February 28, 2002. Plaintiffs' proposed solution is permissible under Fed. R. Civ. P. 23(c)(5), which states that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class." However, defendant suggests indirectly that such a division might not be appropriate by pointing to an unpublished case suggesting that the date of class members' calculation of lump sum benefits may not be the date their claims accrued, but rather the date on which they received the summary plan document "repudiating" any belief that they might receive some other type of benefit.  Hirt v. Equitable Retirement Plan for Employees, Managers, and Agents, 285 Fed. Appx. 802, 804 (2d Cir. 2008) (ERISA claim for illegal amendment to plan accrued when amended summary plan description was distributed).  Defendant does not

10

explain how <u>Hirt</u> could have any bearing on this case in light of its factual differences:  the summary plan descriptions in <u>Hirt</u> were distributed *after* the claimed ERISA violation for illegal amendment occurred, while the summary plan descriptions in this case would have been sent *before* the claimed ERISA violation for illegal calculation of benefits occurred.  For the same reason that a claim for illegal calculation would not be ripe until allegedly illegal calculation occurred, the claim would not "accrue" until that calculation occurred:  that date is when the injury occurred.  <u>Paris v. Wolf, Inc.</u>, 637 F.2d 357, 361 (5th Cir. 1981) (claims for denial of pension benefits do not accrue until claim is denied, both because to hold otherwise would require constant vigilance by unversed participants and because claims filed before pension actually denied might be challenged for lack of ripeness).  To the extent defendant is suggesting that accrual may have occurred *as soon as* the lump sum was calculated, that is consistent with plaintiffs' proposed class, which divides class members according to the date of lump sum calculation.  I am persuaded that plaintiffs' proposed subclasses properly divide the class to address defendant's statute of limitations concerns.

Defendant suggests that typicality and adequacy concerns would remain even among members within the subclass whose claims are susceptible to the statute of limitations because different members may have different grounds for tolling the statute, such as by fraud or concealment.  According to defendant, these differences create both typicality and adequacy problems because plaintiff Larson does not appear to have a fraud or concealment

defense to the statute and would not be able to assert one for those who might.

As a general rule, typicality "should be determined with reference to [the defendant's] actions, not with respect to particularized defenses [the defendant] might have against certain class members." Wagner v. Nutrasweet Co., 95 F.3d 527, 534 (7th Cir. 1996). If this were a case in which varying factual circumstances among class members had been identified and could reasonably be expected to lead to varying degrees of success in responding to defendant's particular defenses, I might have reservations as to typicality. Cf., Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998) (proposed class members' tolling defenses to statute of limitations barred class certification because members' defenses were grounded on distinct misrepresentations made to different members). Id. In this case, however, defendant has offered nothing more than speculation that some class members might have such defenses; it certainly does not admit to engaging in fraud or concealment with respect to some class members that would entitle them to use the defense while others could not.

For the same reason, defendant's concern with plaintiff Larson's adequacy as a class representative is exaggerated. The fact that speculative differences may arise among the class members' defenses to the statute of limitations does not give rise to a concern that plaintiff Larson could not adequately represent that class. In addition, as plaintiffs point out, the fact that they do not intend to pursue individualized tolling defenses does not mean they do not

12

intend to oppose defendant's statute of limitations defense.  Plaintiffs intend to argue that defendant's generally distributed documents were misleading as to their calculation of lump sum payouts and that claims for illegal calculation may not have accrued even upon payout because the injury was "hidden."  In sum, I am persuaded that defendant's statute of limitations defense in itself does not create a typicality or adequacy problem for the subclass whose claims may be susceptible to that defense.

2.  Release contracts

Next, defendant contends that because both named plaintiffs signed release agreements, their claims and defenses will not be typical and they are not likely to fairly and adequately protect the interests of other class members.  To the extent such release agreements would distinguish plaintiffs' claims from other class members and threaten to distract them from representing the interests of those members, defendant's concern is valid. As the Court of Appeals for the Seventh Circuit has stated, "the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."  Koos v. First National Bank of Peoria, 496 F.2d 1162, 1164-65 (7th Cir. 1974).

However, as it turns out, the release agreements defendant identifies do not

13

distinguish plaintiffs or make them less effective representatives because defendant does not have even an "arguable defense" that such releases undermine plaintiffs' claims. Although it is generally inappropriate to make excursions into the merits when determining whether class certification is appropriate, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974), it is necessary to consider the merits of defendant's release defense here because that question overlaps with typicality and adequacy.  Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001) ("Before deciding whether to allow a case to proceed as a class action . . . a judge should make whatever factual and legal inquiries are necessary under Rule 23" and "make a preliminary inquiry into the merits" to extent questions relevant to deciding class certification overlap with merits of case).

There are too many holes in defendant's release defense to allow it to serve as a barrier to class certification. First, the release agreements each contain carve-outs related to plaintiffs' pension benefit rights. Plaintiff Ruppert's agreement states that he "will retain any vested rights under all qualified retirement plans of [Alliant Energy] in which [he] is a participant and all rights associated with such benefits . . . ."  Plaintiff Larson's agreement states that "[t]his agreement does not apply . . . to any claims related to pension or retirement benefits under [ERISA]."  Although defendant suggests that at least plaintiff Ruppert's agreement did not leave him a right to sue, it would be odd to think that he somehow retained vested rights but still "discharged" defendant from any claim related to

14

those rights.  How did he retain rights he cannot assert?

At any rate, there are other problems with the releases.  Neither one discharges claims for future injuries, they release only "all known or unknown" claims and promise not to sue on claims that "relate[] to or arise[] out of" his employment.  Although defendant suggests that this is not a problem because plaintiffs' injuries may have occurred before signing the release, it is simply mistaken.  Plaintiffs are suing for defendant's improper calculation of their lump sum benefits, which occurred only after they signed releases and later requested those benefits.  Finally, to the extent plaintiffs' releases could be construed as releasing defendant from this ERISA suit, the agreement would be unenforceable because agreements that waive future violations of ERISA are unenforceable, 29 U.S.C. § 1110, as are agreements that "alienate" pension entitlements by forfeiting them, 29 U.S.C. § 1056(d)(1).  Lynn v. CSX Transportation, 84 F.3d 970, 975 (7th Cir. 1996) (claims based on entitlements arising under terms of pension plan may not be released, unlike claims based on settlement agreements).

The problem with defendant's release defense is perhaps best illustrated by taking it to its logical conclusion.  According to defendant, although the severance agreements appeared to offer ERISA benefits, they barred plaintiffs forever from suing defendant.  This means that defendant could have denied plaintiffs *any* of their pension benefits, with no threat of a lawsuit.  The fact that defendant paid lump sums is telling.

15

3.  Plaintiffs' lack of interest or independence

Finally, defendant contends that plaintiffs are not adequate class representatives because they have little understanding of the case and rely too heavily on their counsel. Defendant cites cases in which courts have held that class representatives must have a threshold level of knowledge and involvement in the case and independence from their counsel to satisfy the adequacy requirement.  E.g., Maywall v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077-78 (2d Cir. 1995) (representatives' lack of knowledge and involvement in class action may be grounds for denying class certification) (citation omitted); In re AEP ERISA Litigation, Case No. 03-67, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008) (representatives must demonstrate basic understanding of facts and legal claims at issue in case and cannot be merely "puppets" for class counsel) (citation omitted); Krim v. pcOrder.com, Inc., 210 F.R.D. 581, 587-88 (W.D. Tex. 2002) (representatives inadequate because they derived most or all their knowledge of case from class counsel) (citation omitted).

However, defendant identifies no such holding from the Court of Appeals for the Seventh Circuit, probably because that court has taken a different approach, recognizing that "[f]or purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative."  Culver v. City of Milwaukee, 277 F.3d 908, 913 (7th Cir. 2002).

16

The court explained:

> [E]ven when the class representative has some stake . . . it is usually very small in relation to the stakes of the class as a whole, magnifying the role of the class lawyer and making him (or in this case her) realistically a principal.  Indeed *the* principal. . . .  Realistically, functionally, practically, [class counsel] is the class representative, not [the named plaintiff].  Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions.  Every experienced federal judge knows that any statements to the contrary [are] sheer sophistry.

Id. (citations and internal quotations omitted).  Thus, to the extent a class representative's adequacy comes down to a question of "vigorous representation" (as opposed to a question of possible conflict of interests), it is perfectly acceptable to decide that matter in light of the counsel's competence and ability to meet his fiduciary duties to the class.  This case exemplifies why it would be too much to ask plaintiffs to have much familiarity with the case or exercise much independent judgment.  At issue in this case is whether defendant's calculation of class members' pension benefits complied with complex computation requirements set forth in 29 U.S.C. § 1053.  The average plan participant cannot be expected to have even a working understanding about how his pension benefits were calculated or how the law requires them to be calculated.

As for plaintiffs' counsel's qualifications, they include a long list of class actions and putative class actions in which he has been involved over the past ten years of his practice, which is devoted almost exclusively to ERISA pension benefits.  Defendant does not deny

17

that plaintiffs' counsel would be eligible to serve as class counsel under 23(g), which requires counsel to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). I am satisfied that plaintiffs' lack of vigor or information is not so problematic that, with help from their counsel, they could not fairly and adequately represent the class as required by Rule 23(a)(4).

In sum, plaintiffs have made a showing that plaintiffs' claims are typical of the class and that they will fairly and adequately protect the interests of the class. Defendant's arguments in opposition are unavailing.

### C. Choosing the Proper Type of Class Action under Rule 23(b)

Because plaintiffs have shown that they satisfy the four prerequisites set forth in Rule 23(a), the next question is whether the action is "maintainable" as one of the types of class actions listed in Rule 23(b). Plaintiffs contend that this action could be maintained as any of the four types of actions, but that it would be "preferable" to certify the class under Rule 23(b)(1)(A), (b)(1)(B) or (b)(2) instead of (b)(3) to prevent class members from opting out. Defendant is silent on the matter.

The Court of Appeals for the Seventh Circuit has decided that class actions seeking a declaration that a plan's method of calculating lump sums was illegal may be certified under Rule 23(b)(2), which permits classes for actions in which "final injunctive relief or

18

corresponding declaratory relief is appropriate respecting the class as a whole." <u>Berger v. Xerox Corp. Retirement Income Guarantee Plan</u>, 338 F.3d 755, 763-64 (7th Cir. 2003). Although actions such as this one ultimately seek *monetary* relief in the form of a payout for the amount the lump sums were undervalued, this does not mean that this one cannot be maintained under Rule 23(b)(2). As the court explained in <u>Berger</u>, even when the declaration sought is "merely a prelude to a request for damages," it does not bar certification of the class under Rule 23(b)(2) "[a]s long as the concrete follow-on relief that is envisaged if ordered . . . be the direct, anticipated consequence of the declaration." <u>Id.</u> at 764.

As in <u>Berger</u>, the ultimate monetary relief is simply a direct consequence of the requested declaration that the lump sums must be calculated as plaintiffs believe ERISA requires; therefore, plaintiffs' class may be maintained under Rule 23(b)(2). Because I so conclude, I need not decide whether the action may be maintained under Rule 23(b)(1), which would be identical to a Rule 23(b)(2) class for opt out and notice purposes. Rule 23(c)(2). Likewise, I decline to decide whether the action also could be maintained under Rule 23(b)(3); it would be counterproductive to allow class members to opt out in an action that may be maintained under Rule 23(b)(1) or (b)(2). <u>DeBoer v. Mellon Mortgage Co.</u>, 64 F.3d 1171, 1175 (8th Cir. 1995) ("When either subsection (b)(1) or (b)(2) is applicable, however, (b)(3) should not be used, so as to avoid unnecessary inconsistencies and

19

compromises in future litigation.")

### D.  The Scope of the Proposed Class

Because plaintiffs have satisfied the requirements of Rule 23(a) and 23(b)(2), the class may be certified.  However, defendant objects to the scope of the proposed class because it includes individuals who did not receive lump sump payouts and the beneficiaries of those who received incorrect payouts.  In short, defendant suggests that because neither of these groups was "injured," they should not be included in the class.

Defendant's first objection relates to the group of individuals included in the class who "(b) received any form of distribution calculated under the Plan's (or a related, prior plan's) prior formula after that benefit was determined to be more valuable than their benefit calculated under the Plan's cash balance formula."  As plaintiffs point out, this group covers those who received a lesser benefit under a different formula because the benefit was calculated to be more valuable than the allegedly undervalued lump sum benefit.  Those proposed class members were allegedly "injured" in that they could have received more valuable benefits had defendant properly calculated the lump sum benefit (in that case, they automatically would have received the more valuable lump sum benefit.)  Therefore, that group is properly included in the class definition.

Defendant's next concern has merit.  As defendant points out, beneficiaries are

20

entitled to receive compensation if the class prevails only to the extent that the estates suffered injury.  Plaintiffs contend that the beneficiaries should remain in the class because they should have a "right be heard."  However, plaintiffs do not explain why they have such a right or cite any authority for their position.  If the class were to include everyone who might benefit indirectly from a judgment, it would likely have to include creditors, or even friends and family.  Because I see no reason to include beneficiaries in the proposed class, I will narrow the proposed definition provided by plaintiffs accordingly.

## E.  Notice

Under Rule 23(c)(2)(A), "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Although the language of 23(c)(2)(A) is permissive, that does not mean that notice is to be given only upon request.  When Rule 23 was amended in 2003 to provide explicitly for a permissive notice provision for classes such as this one certified under Rule 23(b)(1) or (b)(2), it was to emphasize that members of these  types of class actions "have interests that may deserve protection by notice."  Fed. R. Civ. P. 23, advisory committee note of 2003.  To decide whether notice is proper in such actions, the court should "balanc[e] the risk that notice costs may deter the pursuit of class relief against the benefits of notice."  At this point, it is impossible to determine whether notice is appropriate because the parties have not addressed the matter.  Because the cost

21

of any notice would likely be plaintiffs' burden, <u>Eisen</u>, 417 U.S. at 179, they may start the briefing.  Plaintiffs may have until February 25, 2009 in which to present their position regarding whether notice is proper in this case; defendant may have until March 6, 2009 in which to submit a brief in response; and plaintiffs may have until March 13 in which to submit a brief in reply.

ORDER

IT IS ORDERED that

1.  Defendant's motion for leave to file a second amended answer, dkt. #56, is GRANTED.

2.  Defendant's motion for leave to file a response to plaintiffs' supplement to a motion to compel, dkt. #54, is DENIED as unnecessary.

3.  Plaintiffs' motion for certification of a class action under Fed. R. Civ. P. 23, dkt. #37, is GRANTED; two subclasses are certified and defined as follows:

> a.  All persons who, since January 1, 1998, accrued under the terms of the Alliant Energy Cash Balance Pension Plan (the "Plan"), a vested or partially vested interest in a notional account balance established in their name by the Plan, including all persons who, at any time between January 1, 1998 and February 28, 2002, either (a) received a lump sum distribution of his or her cash balance formula benefit and/or (b) received any form of distribution calculated under the Plan's (or a related, prior plan's) prior formula after that benefit was determined to be more valuable than their benefit calculated under the Plan's cash balance formula and the estates of such persons and alternate

22

payees under a Qualified Domestic Relations Order.

b.  All persons who, since January 1, 1998, accrued under the terms of the Alliant Energy Cash Balance Pension Plan (the "Plan"), a vested or partially vested interest in a notional account balance established in their name by the Plan, including all persons who, at any time between February 29, 2002 and August 17, 2006, either (a) received a lump sum distribution of his or her cash balance formula benefit and/or (b) received any form of distribution calculated under the Plan's (or a related, prior plan's) prior formula after that benefit was determined to be more valuable than their benefit calculated under the Plan's cash balance formula and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

3.   Plaintiffs' motion for appointment of class counsel under Rule 23(g) is GRANTED; Eli Gottesdiener is APPOINTED as class counsel for both subclasses.

4.  Plaintiffs may have until February 25, 2009 in which to present their position regarding whether notice is proper in this case; defendant may have until March 6, 2009 in which to submit a brief in response; and plaintiffs may have until March 13, 2009 in which to submit a brief in reply.

Entered this 12th day of February, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge