IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAWRENCE G. RUPPERT and
THOMAS A. LARSON,
on behalf of themselves and on
behalf of all others similarly situated,

                Plaintiffs,

    v.

ALLIANT ENERGY CASH BALANCE
PENSION PLAN,

                Defendant.

ORDER

08-cv-127-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In an order entered May 13, 2008, I gave the parties one last chance to iron out any disputes they had regarding the language of a proposed notice to class members after telling the parties that they had gotten off track when their focus shifted from the language of the notice to the timing of their filings.  Dkt. #91.  The parties remain off track; plaintiffs abandoned the parties' recent attempts at reaching an agreement, a decision to which defendant devotes a great deal of discussion.  Despite their ongoing inability to agree on anything, the parties have done as requested:  plaintiffs have filed a proposed notice and defendant has filed its objections, so I turn to consider those.

      Leaving aside defendant's numerous objections grounded solely on its preference for

the language found in the earlier draft (which is not at issue), defendant raises ten objections to plaintiffs' proposed notice.

1. Defendant objects to the question and answer format of the notice, preferring a heading and outline format. I find the question and answer format understandable and more likely to engage the reader.

2. Defendant objects to the inclusion of language stating that the court has "authorized" notice, arguing that the language is unnecessary and fails to account for the fact that the court is "merely allow[ing] notice." The statement that the court is "authorizing" notice suggests nothing more than that the court has "allowed" it. I see nothing wrong with this language.

3. Defendant objects to plaintiffs' explanation of the nature of this lawsuit in section 1, contending that it is one-sided. I agree, but do not think the language must be changed as drastically as defendant argues. Rather than import defendant's entire position into this section (the parties' positions are described in greater detail in a different section), I will make only the following change. In paragraph one, the phrase ". . . underpaid you and other class members by paying you the then-current balance of your notional Plan account rather than the actuarial equivalent of the benefit to which you were entitled. . ." will be replaced with the phrase ". . . paid you and other class

2

        members the then-current balance of your notional Plan account, which the named plaintiffs say is less than the actuarial equivalent of the benefit to which you were entitled. . ."

4.     Defendant objects to plaintiffs' explanation of why this case is a class action in section 3, arguing that the discussion is confusing and fails to account for the possibility that class rulings may be "revisited." I disagree with both points. The notice describes the decision to certify the class in simple terms and does not suggest that it is an ironclad decision. Language that the class rulings may be "revisited" or that the class could eventually be decertified might lead to confusion among class members regarding their role in this case.

5.     Defendant objects to section 5's discussion of subclass membership as unnecessary and redundant. Again, I disagree. The language helps explain how a person may determine whether they are a member of either subclass.

6.     Defendant objects to section 7, arguing that it is one-sided and better organized by describing the parties' allegations in separate sections. I agree that additional language should be added to balance plaintiffs' detailed description of their position, but I do not agree that the description of the parties' allegations needs to be in separate sections. I will incorporate much of defendant's stated position, dkt. #95-3, at 4, leaving out the unnecessary

3

language defining "interest credits."  (See the attached modified notice.)

7. Defendant objects to section 8 as unnecessary and redundant.  I disagree.  Although the notice implies throughout that the court has not decided "whether Plaintiffs or the Plan are correct as to either their claims or defenses," it cannot hurt to emphasize this point, as plaintiffs have proposed.

8. Defendant objects to references to plaintiffs' counsel's websites in section 11, arguing that reference to them might suggest endorsement by the court without adequate cautionary language.  I agree.  To avoid the appearance of endorsement, the language will be changed from "More information about him and his firm is available at . . ." to "The website for Class Counsel's firm is available at . . ."

9. Defendant objects to plaintiffs' deletion of the following language from section 13:  "neither the Court nor the Plan endorses or necessarily endorses any of the information contained on the website . . .."  I am not persuaded that this language is necessary.  The proposed notice states that "[t]he Court does not indicate its agreement with the content of Class Counsel's website by informing Subclass members of its existence."  Thus, the only thing missing is a notice that the plan does not endorse the website.  There is little possibility that a class member would believe that to be the case, particularly

4

because it is obvious that the parties are adverse and the notice explains that the website has been created by class counsel.

10. Defendant asserts that it is unnecessary to instruct notice recipients not to call the clerk of court with questions regarding the notice. I agree. The simpler language "ALL INQUIRIES CONCERNING THIS NOTICE SHOULD BE DIRECTED TO CLASS COUNSEL, NOT TO THE COURT" is sufficient.

Defendant raises one other objection to language formerly in section 9 that indicated unnecessarily that some decision of the court was made "over the defendant's objection." This objection must have been addressed by plaintiffs because it was not included in the proposed notice plaintiffs submitted to the court. Dkt. #96.

ORDER

IT IS ORDERED that plaintiffs' proposed class notice is APPROVED with the changes indicated above. The court has included with this order a copy of the revised

5

notice. Counsel for plaintiffs should make copies and mail the notice promptly.

Entered this 2nd day of June, 2009.

> BY THE COURT:
>
> /s/
>
> _____
> BARBARA B. CRABB
> District Judge

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

LAWRENCE G. RUPPERT and

THOMAS A. LARSON

On behalf of themselves and on behalf of             Case No. 08-cv-00127-bbc
All others similarly situated,

                    Plaintiffs,

    v.

ALLIANT ENERGY CASH BALANCE
PENSION PLAN,

                    Defendant.

---

**NOTICE OF PENDENCY OF CLASS ACTION LAWSUIT**
**FILED ON YOUR BEHALF**

*The United States District Court authorized this Notice to be sent to you.*

      This Notice is being sent to you in the belief that you are a former participant in the **Alliant Cash Balance Pension Plan** (the "Plan") and a member of one of two Subclasses (described below).  The Court presiding over this case has ordered that you and all other members of the two subclasses receive notification that:

- A case has been filed on your behalf under the federal pension law known as "ERISA" (the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*)

- The case claims that the Plan underpaid lump sum distributions to you and other Plan participants between January 1, 1998 and August 17, 2006.

- The case has been certified a class action.

- The case will decide whether you and other subclass members are entitled to an additional payment and if so, how much.  The lawsuit does not put at risk the payment that you or any other subclass member have already received.

- You can learn more about the case including by contacting Class Counsel whose contact information is listed below.

**BASIC INFORMATION**

**1.     What is this lawsuit about?**

This lawsuit is about whether the defendant, the Alliant Cash Balance Pension Plan (the "Plan"), violated the federal pension laws by paying you less than you were legally due when it paid you your pension benefit in the form of a lump sum.  The lawsuit covers lumps sums paid between January 1, 1998 and August 17, 2006.  The named plaintiffs, former Alliant employees Lawrence Ruppert and Thomas Larson, allege that the Plan, a "cash balance" defined benefit pension plan, paid you and other class members the then-current balance of your notional Plan account, which the named plaintiffs say is less than the actuarial equivalent of the benefit to which you were entitled at normal retirement age (age 65 under the Plan).

The Plan denies that it violated ERISA or paid you less than you were owed.  It contends that your then-current notional account balance was the actuarial equivalent of your pension benefit.

At this time, the Court has not decided whether Plaintiffs or the Plan are correct.  The Court has, however, decided that the case should proceed as a class action, that you should be informed of that, about the issues involved in the suit, about the potential effect of the suit on your rights and about how to contact class counsel for more information about the case.

**2.     What is a class action and who is involved?**

In a class action lawsuit, one or more people called "Class Representatives" (in this case, the two named plaintiffs mentioned above) sue on behalf of other people who have the same or similar claims.  The people together are a "Class" or "Class Members." In this case, the Court has certified two classes (here referred to as "Subclass[es]").  The definition of the two Subclasses is found in Section 4 below.  The Class Representatives who sued - and all the Class Members like them - are called the Plaintiffs.  The entity that they sued (in this case, the Plan) is called the Defendant. The United States District Court in Madison, Wisconsin will resolve the issues for all parties:  the Plaintiffs (including all members of the two Subclasses), and the Defendant (the Plan).

**3.     Why is this lawsuit a class action?**

On February 12, 2009, the Court ruled that the case should proceed as a class action because it met the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts.  Specifically, the Court found that:

- The number of members in the Subclasses is sufficiently large as to make joining everyone in either Subclass in one lawsuit impracticable;

2

- There are legal questions and facts that are common to each of the members of each subclass;

- Mr. Larson's claims are typical of the claims of the Subclass A (persons receiving lump sums between January 1, 1998 and February 28, 2002) and Mr. Ruppert's claims are typical of the claims of the Subclass B (persons receiving lump sums between February 28, 2002 and August 17, 2006);

- The Class Representatives and the lawyer representing the two Subclasses will fairly and adequately represent the interests of the Subclasses; and

- The allegations alleged in the Complaint apply generally to each of the Subclasses so the final injunctive or declaratory relief is appropriate respecting each Subclass as a whole.

**4.     How are the Subclasses defined?**

The Court certified two "non-opt out" subclasses of participants – Subclass A and Subclass B. Generally speaking, Subclass A consists of persons receiving a lump sum from the Plan between January 1, 1998 and February 28, 2002 (more than six years prior to the date this lawsuit was filed) whereas Subclass B consists of persons receiving a lump sum between February 29, 2002 and August 17, 2006 (within six years of the date suit was filed).

More specifically, the Court has defined the Subclasses A and B as follows:

(A)     All persons who, since January 1, 1998, accrued under the terms of the Alliant Energy Cash Balance Pension Plan (the "Plan"), a vested or partially vested interest in a notional account balance established in their name by the Plan, including all persons who, at any time between January 1, 1998 and February 28, 2002, either (a) received a lump sum distribution of his or her cash balance formula benefit and/or (b) received any form of distribution calculated under the Plan's (or a related, prior plan's) prior formula after that benefit was determined to be more valuable than their benefit calculated under the Plan's cash balance formula and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

(B)     All persons who, since January 1, 1998, accrued under the terms of the Alliant Energy Cash Balance Pension Plan (the "Plan"), a vested or partially vested interest in a notional account balance established in their name by the Plan, including all persons who, at any time between February 29, 2002 and August 17, 2006, either (a) received a lump sum distribution of his or her cash balance formula benefit and/or (b) received any form of distribution calculated under the Plan's (or a related, prior plan's) prior formula after that benefit was determined to be more valuable

3

than their benefit calculated under the Plan's cash balance formula and the estates of such persons and alternate payees under a Qualified Domestic Relations Order.

To represent members of Subclass A, the Court appointed Mr. Larson, who is a member of Subclass A. Mr. Larson, like the other members of Subclass A, received his lump sum more than six years prior to the date suit was filed. To represent members of Subclass B, the Court appointed Mr. Ruppert. Mr. Ruppert, like the other members of Subclass B, received his lump sum within six years of the date suit was filed.

The reason for the creation of the two different subclasses is related to the Plan's statute of limitations defense. The Court has not ruled on this or any other defense but determined that it was advisable that these two subgroups of participants be represented by a member of their own group to ensure everyone is adequately represented.

**5.     Am I a member of one of the two Subclasses?**

If you fit the definition of Subclass A or Subclass B as stated in Section 4 above, then you are a member of the two Subclasses in this case.

### POTENTIAL EFFECT OF CLASS RULING

**6.     What potential effect will the Court's class ruling have on my rights?**

The ruling by the Court that this case is a class action means that the final outcome of this lawsuit, whether favorable to the Plaintiffs or the Plan, will apply in like manner to every member of the Subclasses. Thus, for example, you will be legally bound by any ruling that determines that the members of one or both Subclasses are not entitled to any additional payment. At the same time, you need do nothing to participate in the case. So, for example, you need take no action in order to receive an additional payment if such additional payments are ordered or result from a Court-approved settlement. (In the event of a proposed settlement, you will be given notice of the proposal and an opportunity to be heard regarding its adequacy and fairness. If there are additional payments to be made either as a result of a decision by the Court or a Court-approved settlement, you will also receive notice and an opportunity to be heard as to the reasonableness of any fees and expenses Class Counsel may request the Court approve to be paid out of such award.)

### ISSUES INVOLVED IN THE CASE

**7.     What does the lawsuit complain about and what is the Defendant's response?**

Plaintiffs allege that in cashing out your pension benefit, the Plan ignored the value of your right to continue to receive annual interest credits through age 65, equal to the greater of: (i) 4% or (ii) 75% of the Plan's asset returns, whether or not you left your benefit in the Plan until that time. Plaintiffs allege that the Plan's crediting rate is an

"above-market" rate that was designed and expected to provide you with a growth rate of, on average, approximately 9% to 10% per year. Plaintiffs allege that the Plan's use of the low-yielding 30 year-Treasury bond to replicate the growth rate that you would have experienced had you left your benefit in the Plan to age 65 caused you to forfeit a substantial portion of your ERISA-protected accrued benefit.

The Plan denies Plaintiffs' allegations and contends that Plaintiffs have received the benefits they were due. In particular, the Plan contends that the Plan's use of the 30 year Treasury bond was an unbiased estimator of the actual plan crediting rate, and has produced results close to the actually credited rates. In the Plan's view, the bond rate has not been consistently higher or lower than the actually credited rates and its use was therefore fair and reasonable. The Plan maintains that it is properly drafted and was and is being properly administered to pay out lump sums. The Plan also contends that some of the class claims are barred by releases signed by a number of class members and the applicable statute of limitations. Both of the named plaintiffs are among those who signed releases.

**8.     Has the Court decided who is right?**

The Court has not decided whether Plaintiffs or the Plan are correct as to either their claims or defenses.

## CASE HISTORY – CURRENT STATUS

**9.     What has happened in the case so far?**

The case was filed in February 2008. The Plan moved to dismiss the complaint and amended complaint. The Court denied that motion in August 2008. Following that ruling, "discovery" commenced but the parties could not reach agreement on the proper scope of discovery. Plaintiffs moved to compel complete responses to their written discovery requests. The Court granted that motion in December 2008.

Plaintiffs moved for class certification in November 2008. The Plan opposed the motion and took the depositions of Mr. Ruppert and Mr. Larson, the named plaintiffs in this case, in December 2008. In February 2009, the Court certified the case as a class action.

**10.    What is the current status of the case and what happens next?**

The case is currently in the "discovery" phase. If the Court cannot decide the case based on any additional motion papers, a trial will be held. Following trial, one or both sides may appeal. The case will end after all appeals are exhausted, unless an order of the trial court is reversed for further proceedings. (Another manner in which the case may conclude is by agreement, via a settlement. Because the case is a class action, in order to protect the interests of absent class members such as yourself, no settlement can be accomplished without the approval of the Court.)

**THE LAWYER REPRESENTING YOU AND THE SUBCLASSES**

**11.     Do I have a lawyer in this case?**

The Court has decided that Eli Gottesdiener of the Gottesdiener Law Firm, PLLC is qualified to represent you and the members of the two Subclasses.  Mr. Gottesdiener is referred to as "Class Counsel."  He is experienced in handling similar cases.  The website for Class Counsel's firm is available at www.gottesdienerlaw.com.  Class Counsel's contact information is as follows:

> Eli Gottesdiener
> Gottesdiener Law Firm, PLLC
> 498 7th Street
> Brooklyn, NY 11215
> Tel:  718.788.1500
> Fax:  718.788.1650
> eli@gottesdienerlaw.com

**12.     Should I get my own attorney?**

You do not need to hire your own lawyer because Class Counsel is working on your behalf.  If you want your own lawyer, you will have to retain and pay for that lawyer.  For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.  You do not have to do anything now if you want to continue being represented by Class Counsel.  By doing nothing, you will continue to be represented by Class Counsel.

**MORE INFORMATION**

**13.     How can I get more information on the case?**

There are several ways you can obtain more information regarding the lawsuit:

- You may visit the website Class Counsel has created dedicated to the suit in an effort to keep class members informed about the case, www.alliantpensionclassaction.com. (Note:  The Court does not indicate its agreement with the content of Class Counsel's website by informing Subclass members of its existence.)

- You may also inspect all the papers concerning this lawsuit at the Office of the Clerk, United States District Court for the Western District of Wisconsin, 120 North Henry Street, Room 320, P.O. Box 432, Madison, WI 53701-0432, (608) 264-5156, during regular business hours.  *See also* www.wiwd.uscourts.gov.

- The case filings may also be viewed on the court's electronic filing website, PACER, at http://pacer.psc.uscourts.gov. (To use PACER, you must first set up an account and pay $0.08 per page for downloading court documents.)

**ALL INQUIRIES CONCERNING THIS NOTICE SHOULD BE DIRECTED TO CLASS COUNSEL, NOT TO THE COURT.**

Dated: May __, 2009

Approved by the Honorable Barbara B. Crabb
of the United States District Court
for the Western District of Wisconsin
by an Order dated ____ __, 2009

7