# EXHIBIT J

# McGill, Brown, Haley and Schieber's book, *The Fundamentals of Pensions*, 8th Edition (2005)

# FUNDAMENTALS OF
# Private Pensions
## Eighth Edition

## McGill ▪ Brown ▪ Haley ▪ Schieber

# Fundamentals of
# Private Pensions

# Fundamentals of Private Pensions

## EIGHTH EDITION

Dan M. McGill

Kyle N. Brown

John J. Haley

Sylvester J. Schieber

*Pension Research Council*
*The Wharton School of the University of Pennsylvania*





## OXFORD
UNIVERSITY PRESS

HD
7105
.35
.U6
M34
2005

# OXFORD

UNIVERSITY PRESS

Great Clarendon Street, Oxford OX2 6DP

Oxford University Press is a department of the University of Oxford.
It furthers the University's objective of excellence in research, scholarship,
and education by publishing worldwide in

Oxford New York

Auckland  Cape Town  Dar es Salaam  Hong Kong  Karachi  Kuala Lumpur
Madrid  Melbourne  Mexico City  Nairobi  New Delhi  Shanghai  Taipei
Toronto

With offices in

Argentina  Austria  Brazil  Chile  Czech Republic  France  Greece
Guatemala  Hungary  Italy  Japan  Poland  Portugal  Singapore
South Korea  Switzerland  Thailand  Turkey  Ukraine  Vietnam

Oxford is a registered trade mark of Oxford University Press
in the UK and in certain other countries

Published in the United States
by Oxford University Press Inc., New York

Copyright © 2005 by the Pension Research Council of the
Wharton School of the University of Pennsylvania

The moral rights of the author have been asserted
Database right Oxford University Press (maker)

All rights reserved

First published 2005

All rights reserved. No part of this publication may be reproduced,
stored in a retrieval system, or transmitted, in any form or by any means,
without the prior permission in writing of Oxford University Press,
or as expressly permitted by law, or under terms agreed with the appropriate
reprographics rights organization. Enquiries concerning reproduction
outside the scope of the above should be sent to the Rights Department,
Oxford University Press, at the address above

You must not circulate this book in any other binding or cover
and you must impose this same condition on any acquirer

British Library Cataloguing in Publication Data

Data available

Library of Congress Cataloging in Publication Data

Data available

ISBN 0-19-926950-5

10 9 8 7 6 5 4 3 2 1

Typeset by Kolam Information Services Pvt. Ltd., Pondicherry, India.
Printed in Great Britain
on acid-free paper by
Antony Rowe Ltd, Chippenham, Wiltshire

*In memory of loving daughters*
*who have gone before us*

**Melanie M. McGill**

*and*

**Shannon J. Schieber**

# Contents

*List of Figures* ix

*List of Tables* xiii

*Preface* xxi

## Section I. Introduction

1. Underlying Forces 3
2. Public Pension Programs 39
3. Economics of Tax Preferences for U.S. Retirement Plans 54

## Section II. The Regulatory Environment

4. Historical Review of Pension Regulation 79
5. Basic Regulatory Environment and Plan Qualification Requirements 98
6. Coverage, Nondiscrimination, and Integration with Social Security 127
7. Tax Consequences—Distributions and Contributions 159
8. Form of Doing Business and Transactional Considerations 183
9. Fiduciary Responsibility and Participant Rights 208

## Section III. The Structure of Private Retirement Plans

10. Defined Benefit Design: Retirement and Ancillary Benefits 235
11. Defined Contribution Plan Design Features 273
12. Hybrid Defined Benefit Plan Designs 309
13. Individual Tax-Favored Savings Plans 327

## Section IV. Design and Delivery of Retirement Benefit Programs

14. Overall Objectives in Designing a Retirement Program 353
15. Financing of Employer-Sponsored Retirement Plans 374
16. Total Retirement Income: Setting Goals and Meeting Them 401
17. Dealing with Risks of Outliving Retirement Resources 444
18. Human Resource Incentives in Employer-Sponsored Retirement Plans 479
19. Motivations and Ramifications for the Shift to Hybrid Pensions 519
20. Changing the End of Work—Phased Retirement 552

viii   **Contents**

# Section V.  Pension Funding and Accounting

21. Actuarial Cost Factors — 595
22. Benefit Allocation Actuarial Cost Methods — 617
23. Cost Allocation Actuarial Cost Methods — 645
24. Pension Cost Illustrations and Forecasts — 666
25. Approaches to Meeting the Financial Obligations of a Defined Benefit Plan — 679
26. Pension Accounting — 712

# Section VI.  Assets and Insurance

27. Management of Pension Plan Assets: Policy — 737
28. Management of Pension Plan Assets: Operations — 763
29. Plan Termination and Plan Benefits Insurance — 798

*Index* — 835

# CHAPTER 26

# Pension Accounting

Historically, pension accounting has been concerned with measuring the impact of a pension plan on the earnings and financial condition of the sponsor of the plan. More precisely, it has been concerned with measuring and recording the cost of accruing pension benefits and with recognizing the unfunded actuarial liabilities of the pension plan, especially those arising out of the granting of benefit credit for service prior to the inception or amendment of the plan.

A succession of committees of the American Institute of Certified Public Accountants and its predecessor organizations have grappled with the problem of developing an acceptable set of principles to guide the actuarial profession in accounting for pension costs and liabilities and to bring about uniformity in practice. Each of these committees has issued authoritative, officially endorsed statements of recommended practice, all of which are reviewed briefly in this chapter. With the passage of the Employment Retirement Income Security Act of 1974, certain reporting and disclosure requirements were imposed on the pension plans subject to its jurisdiction, and the accounting profession was charged with certifying the appropriateness and accuracy of the financial information in the reports. Thus it became necessary for the profession to develop generally accepted accounting principles for the plans themselves, quite apart from to their sponsors. In response to this challenge, the Financial Accounting Standards Board, the current arbiter of accounting practices and standards, launched two projects, one to develop generally accepted accounting principles for pension plans themselves and the other to develop such principles for the business and nonprofit entities that sponsor the plans. The result of these projects is examined in this chapter.

Unless otherwise indicated, the discussion focuses on *defined benefit* plans, since pension cost accounting is concerned primarily with such plans. For any given accounting period, the employer's expense for a defined contribution plan is usually known with exactitude. Some defined contribution plans have a formula that specifies precisely how much must be contributed by the employer for the period in question. Other defined contribution plans give the employer complete discretion; but by the time the financial statements for the period are prepared, the contribution ordinarily has been paid, or at least has been determined. For defined contribution plans, the employer's charge to

722   **Section V · Funding and Accounting**

used in determining the base itself. Accountants usually considered any contribution that was within the deductible limits to be acceptable as a charge to expense, even if it exceeded the amount described by Opinion 8. This difference was allowed either because the accountant determined that the difference was not material or because he or she believed, rightly or wrongly, that Opinion 8 could reasonably be interpreted to allow past service liabilities to be amortized at the same rate at which they could be funded on a tax-deductible basis. For whatever reason, there was usually little difference between the pension expense for an accounting period and the contributions to the plan for the period.

## FASB Statement 36: Disclosure of Pension Information

Pending completion of the project on employer accounting for pensions (described later in this chapter), FASB issued Statement No. 36, *Disclosure of Pension Information*. Statement 36 amended Opinion 8 to require plan sponsors to disclose in notes to their financial statements much of the same information that Statement 35 requires of the plans themselves. If the employer maintained more than one plan, the information could be reported in total for all plans, separately for each plan, or combined in useful groupings. For both defined benefit and defined contribution pension plans the following items were required:

(a) a statement that a pension plan existed, identifying or describing the employee groups covered,

(b) a statement of the company's accounting and funding policies,

(c) the provision for pension cost for the period, and

(d) the nature and effect of significant matters affecting comparability for periods presented, such as changes in accounting methods (actuarial cost method, amortization of past and prior service cost, treatment of actuarial gains and losses, etc.), changes in circumstances (actuarial assumptions, etc.), or adoption or amendment of a plan.

For defined benefit plans, the notes also had to disclose the actuarial present values of vested and nonvested accumulated plan benefits, the interest rates used in determining them and the date as of which they were determined, and the plan's net assets available for benefits. Statement 36 made no change in the basic provisions of Opinion 8 that governed measurement of pension cost and pension liabilities.

## FASB Statement 87: Employers' Accounting for Pensions

Despite the fact that Opinion 8 was a major step forward in the evolution of rational accounting for pension costs by sponsors of defined benefit pension plans, the financial community and certain segments of the accounting profession gradually grew dissatisfied with it. The principal criticisms of the opinion were that it:

Case: 3:08-cv-00127-bbc    Document #: 246-10    Filed: 03/19/10    Page 11 of 21

- accepted a variety of actuarial cost methods and amortization practices,
- permitted artificial leveling or smoothing of pension expense,
- failed to recognize certain obligations as liabilities of the plan sponsor,
- provided too much latitude in the choice of actuarial assumptions,
- ignored postretirement benefits not provided within the framework of a pension plan.

Recognizing these perceived flaws in Opinion 8, the FASB undertook a broad project to develop a new set of pension accounting principles for plan sponsors that would be acceptable to all segments of the business and financial communities, especially the accounting and actuarial professions. Over a period of several years the FASB produced a background paper on the subject,[10] a discussion memorandum,[11] a set of tentative conclusions entitled *Preliminary Views*, an exposure draft,[12] and finally, in 1985, Statement of Financial Accounting Standards No. 87, *Employers' Accounting for Pensions*. At various stages in the long drawn-out process, public hearings were held, and interested constituents and knowledgeable professionals were consulted extensively. Many persons and groups have criticized the final document or portions of it.

## Underlying Propositions

Certain fundamental concepts or propositions underlie Statement 87.

### A. Deferred Compensation

The first proposition is that pensions are a form of deferred compensation. Plan participants exchange a portion of their service to the employer for the latter's promise to pay them certain benefits at a later date, if certain conditions are met. By participating in the plan, the participants implicitly (or, in certain collective bargaining situations, *explicitly*) agree to accept lower current compensation in return for the promise of pension plan benefits, subject to the terms and conditions of the plan, and the employer incurs a parallel obligation independent of any contributions that the employer may be making to the plan.

### B. Obligation to Individuals

The second proposition is that the employer's obligation for ultimate payment of the 'deferred wages' runs to the employees, as individuals, rather than to the plan or to the plan participants collectively. Under this view, the plan and its associated trust are merely the vehicles or instrumentalities through which the employer discharges its obligation to

---

[10] FASB, 'Accounting for Pensions by Employers: A Background Paper' (Stamford, Conn., March 1980).

[11] FASB Discussion Memorandum, 'Employers' Accounting for Pensions and Other Post-retirement Benefits' (Stamford, Conn., February, 1981).

[12] FASB, Exposure Draft, 'Employers' Accounting for Pensions' (Stamford, Conn., March 1985).

724   **Section V · Funding and Accounting**

the individual employees. This view rejects the notion that the employer discharges its obligation by making the required contributions to the plan trustee. Despite the fact that the employer can recapture its contributions to the plan only under severely restricted conditions, the employer retains a financial stake in the plan assets. If the total return on the assets exceeds the assumed rate of return, the employer can reduce future contributions to the plan; if the investment experience of the plan is unfavorable, the employer must make larger contributions to the plan than anticipated. Indeed, in the long run the employer must make up any loss of principal that the assets may suffer.

Because of the contingencies involved in qualifying for a benefit, notably employee turnover and deaths, some respected observers believe that the employer's obligation under the plan is to the covered employees, as a group. As a practical matter, the difference between the two views may be more conceptual than real.

### C. Indefinite Continuance

The third proposition is that the plan will continue indefinitely. The significance of this assumption is that all the benefits that accrue under the plan will ultimately have to be paid, subject to the actuarial experience. The employer cannot look only to the benefits that have vested as of a given point in time. If the plan were to terminate, some nonvested benefits might not be paid; but if the plan continues, both vested and nonvested benefits will qualify for payment, again subject to diminution through population decrements.

### D. Benefit Earned Proportionately

The fourth proposition is that a plan participant earns a pro rata proportion of his or her total prospective benefit with each year of service. This has to do with the *measurement* of benefit accruals. It is also an essential element in the venerated accounting concept of matching *revenue* and *expense*. Presumably an employee's service during a given accounting period produces revenue to the employer. The pension cost component of the total compensation package of the individual for that period should be recognized and charged to operations in the same manner as cash wages and current fringe benefits. Thus it is necessary to determine on some rational basis the rate at which employees earn their total pensions over the various accounting periods of their employment.

The actuarial profession has generally preferred to allocate or attribute the total prospective pension in such a manner as to produce a level annual *cost*, in dollars or as a percentage of compensation, the *benefit* allocation being grossly distorted in many cases. In theory, the employees should earn their pension at the same rate at which they earn their wages or salary. This would mean that the dollar amount of prospective pension benefit allocated to each accounting period should constitute a *level percentage of pay*. For practical reasons, the FASB chose to prorate the total pension over the total years of service, which obviously produces a constant *dollar* amount of benefit accrual for each year of service.

### E. Future Value of Prior Service Benefits

The fifth proposition is that granting benefit credits for service prior to inception or amendment of the plan will produce future economic benefits to the firm through reduced employee turnover, improved productivity, lower cash compensation, and enhanced prospects for attracting additional qualified employees. This proposition provides the rationale for charging the cost of such 'prior service benefits' (which may include postretirement cost-of-living benefit increases) to future earnings, rather than to retained earnings, and for recognition of an intangible asset offsetting the future cost of such benefits. It is further presumed that the economic benefits from prior service benefits will be realized from the future efforts and attitudes of the employees with the firm at the time the benefit credits are bestowed. Thus it follows that the intangible asset should be amortized or written off over the average remaining service period of the active employees.

### F. Pension Plan Autonomy

The sixth and final proposition is that a pension plan is a sufficiently autonomous legal entity that it would be inappropriate to include its assets and liabilities on the balance sheet of the business firm or other organization that sponsors the plan. The plan participants have first claim to the assets of the plan, and those assets are not available to the plan sponsor as long as the plan is in existence. The assets, however, are properly regarded as an offset to the plan's benefit obligations. Thus the FASB has concluded that the net difference between the plan's assets and liabilities should be reflected in the sponsor's balance sheet, in the manner described hereafter.

## Provisions of FASB Statement 87

### A. Measurement of Benefit Obligation

Statement 87[13] uses several measures of the value of benefits attributable to the past, which it calls the 'benefit obligation.'

The term 'accumulated benefit obligation,' is essentially the same as the term 'actuarial present value of accumulated plan benefits' of FASB Statement 35 and the term 'present value of accrued benefits' used by Form 5500. It is the actuarial present value of benefits attributed by the pension plan's benefit formula to employee service rendered before a specified date, based on employee service and compensation prior to that date. The 'vested benefit obligation' is the actuarial present value of vested benefits. This is the vested portion of the accumulated benefit obligation.

The 'projected benefit obligation' is the actuarial present value as of a specified date of benefits attributed by the pension plan's benefit formula to employee service rendered

[13] Statement of Financial Accounting Standards No. 87, Employers' Accounting for Pensions (Stamford, Conn.: FASB, 1985). It is essential to study including the illustrations in Appendix B, to fully understand its provisions. This text uses various phrases from the Statement without indicating their quotation.

726    **Section V · Funding and Accounting**

prior to that date. Unlike the accumulated benefit obligation, the projected benefit obligation utilizes salary projections to estimate the amount of benefits that will ultimately be payable and to determine the proportion of those projected benefits that are related to service to date. For a plan in which benefits are not related to pay, the accumulated benefit obligation and the projected benefit obligation are the same.

The 'service cost' is the actuarial present value of projected benefits attributable to the single year (or other fiscal period) for which the financial statement is prepared. Like the projected benefit obligation, the service cost is based on projected future salaries.

If future increases in benefits have been contractually promised, as under a collective bargaining agreement for hourly employees, such increases must be reflected in both the accumulated benefit obligation (assuming retroactive application of the benefit increases) and the projected benefit obligation, as well as in the service cost. This means the participants' expected year of retirement must be recognized.

If an employer has a history of regular increases in non-pay-related benefits or in the past service benefits under a career-average-pay plan, this may indicate that the employer has a present commitment to make future amendments and that the substance of the plan is to provide benefits attributable to prior service that are greater than those described by the plan document. If so, the substantive commitment must be used in determining the projected benefit obligation and the service cost.

### B. Measurement of Plan Assets

Statement 87 uses two measures of plan assets, 'fair value' and 'market-related value.' Fair value is the amount that a pension plan could reasonably expect to receive for an asset in a current sale between a willing buyer and a willing seller, that is, other than in a forced or liquidation sale. If an active market exists for the asset, fair value is the market value. Plan assets used in the operation of the plan, such as buildings and equipment, are valued at their cost less accumulated depreciation or amortization.

The 'market-related value of plan assets' may be either the fair value or a calculated value that recognizes changes in fair value over not more than five years, such as a five-year-average-market-value method.

Plan assets include amounts held in a trust or annuity contract to provide benefits but do not include other employer assets or reserves that may have been designated for pension funding but not effectively restricted to such use.

### C. Annuity Contracts

A number of special rules apply to annuity contracts under which the insurer has guaranteed to provide specified benefits to specific participants. Benefits funded through such contracts are generally excluded from all three measures of benefit obligation, and the value of such contracts is excluded from the plan assets. For participating annuity contracts under which future dividends are anticipated, however, the excess of the purchase price over the cost of a comparable nonparticipating contract is treated as

the purchase of a right to future dividends. The statement provides rules for valuing such an asset in future years.

The treatment of annuity contracts described above does not apply to annuity contracts that do not guarantee specified benefits to specific participants or to annuity contracts under which the employer remains subject to all or most of the risks and rewards related to future experience. Such contracts are treated as investments and are valued at fair value. The contract's cash surrender value or conversion value, if determinable, is considered its fair value.

### D. Assumptions

Each significant assumption used in calculating the benefit obligations and the service cost must reflect the best estimate of anticipated experience solely with respect to that specific assumption. The salary increase assumption should reflect estimated compensation changes for present participants, including changes related to price inflation, productivity, seniority, promotions, and other factors. Projected Social Security benefits used to calculate benefits in Social Security offset plans should reflect estimates of the future increases in price and wage levels that affect Social Security benefits. Projected benefits should be based on the assumptions that any automatic future increase in the maximum limits on benefits under Section 415 of the Internal Revenue Code will occur (to the extent the plan document reflects such future increases), in contrast to the Code's requirement that these increases be ignored for minimum funding purposes.

The interest assumption used to calculate each of the benefit obligations and service cost, called the 'discount rate,' must reflect the rates at which the pension benefits could be effectively settled. In estimating these discount rates, the actuary would find it appropriate to consider information about interest rates used in current annuity purchase rates (including rates published by the Pension Benefit Guaranty Corporation). The PBGC periodically surveys annuity purchase rates and publishes regulations stating the interest rates implied in the annuity purchase rates. The computations required by Statement 87 and their explanation are simplified if the employer uses a single interest rate as the discount rate, but the PBGC rates consist of one interest rate for retired participants and a series of rates applicable to different years for participants not yet retired. Some plan sponsors have adopted either the PBGC rate applicable to retired employees or a composite level rate that would approximately reproduce the service cost generated by the series of PBGC rates. Instead of using interest rates reflecting annuity purchase rates, employers may look to rates of return on high-quality fixed-income investments currently available and expected to be available during the period to maturity of the pension benefits. Such fixed-income rates are generally higher than the PBGC rates and other annuity purchase rates. Material changes in long-term interest rates may not be ignored. Thus if interest rates fluctuate, it could be necessary to change the discount rate almost every year.

In addition to the discount rate used to calculate benefit obligations and service cost, Statement 87 requires an investment return assumption to be used to estimate the

## 728  Section V · Funding and Accounting

expected return on plan assets. This investment return assumption, called the 'expected long-term rate of return on plan assets,' may or may not be the same as the discount rate. In selecting this rate, the plan sponsor must consider the returns currently being earned by the plan assets and rates of return expected to be available for reinvestment. Because of the extreme volatility of common stocks as a class, past rates of return on the common stock component of a pension plan investment portfolio may be an unreliable guide to future performance. Long-term bond rates may be a better indicator of future portfolio returns. Some employers have adopted the discount rate as the expected long-term rate of return on plan assets, and illustrations included in Statement 87 indicate that using the same rate for both purposes is acceptable, at least in some circumstances.

### E. Recognition of Net Periodic Pension Cost

The 'net periodic pension cost' (which Opinion 8 termed 'annual provision for pension cost') to be charged as an expense against income for a year (or other fiscal period) consists of six components:

- service cost,
- interest cost,
- actual return on plan assets,
- amortization of unrecognized prior service cost, if any,
- gain or loss (including the effects of changes in assumptions) to the extent recognized,
- amortization of unrecognized obligation at the date of initial application of Statement 87.

As a result of the combination of these six elements, the net periodic pension cost may be negative, although it will usually be positive. Each of the six elements needs explanation. For simplicity, this text assumes that the fiscal period is a year.

1. Service cost.  The service cost is the cost associated with the benefits attributable to the particular year for which the financial statement is prepared. It is the actuarial present value of benefits attributed to services rendered by employees during that period, calculated as of the last day of that period. Pension benefits are to be attributed to particular years in accordance with the plan's benefit formula, except that, like the projected benefit obligation, benefits are to be based on projected salaries rather than actual compensation prior to the statement date. If the plan benefit formula is the same for all years of service, the benefit attributed to any particular year would equal the participant's anticipated benefit calculated on the basis of projected salary and service, divided by the projected years of service.[14] But if the benefit formula is not the same for all years, such as 1 percent

---

[14] This is comparable to the unit credit actuarial cost method with benefits prorated by years of service, also called the 'projected unit credit' method. Unlike IRS minimum funding regulations for plans using the unit credit method, Statement 87 requires that career average pay plans, like final average pay plans, use projection of benefits with projected salary increases.

expected
ount rate.
ig earned
ecause of
common
: guide to
portfolio
rm rate of
using the


or pension
al period)


tent recog-

n of State-

n cost may
eds explan-


table to the
rial present
riod, calcu-
o particular
cted benefit
mpensation
rs of service,
anticipated
he projected
1 as 1 percent

ervice, also called
iit credit method,
of benefits with

of pay per year of prior service and 1.5 percent of pay per year of future service, the allocation of the projected benefit among the years of service would be similarly prorated. Special rules apply to benefits not related to years of service, such as death, disability, or supplemental early retirement benefits that are not a function of service.

**2. Interest cost.** The interest cost component represents the amount by which the projected benefit obligation is expected to grow during the year because of interest. It normally represents the discount rate multiplied by the projected benefit obligation at the beginning of the year, perhaps adjusted to reflect interest on benefits paid during the year.

**3. Actual Return on Plan Assets.** The actual return on plan assets is the total investment income for the year, including realized and unrealized appreciation and depreciation of the fair value of plan assets. It equals all of the increase in the fair value of plan assets during the year except the portion resulting from the excess of contributions over benefits.

Under Statement 87 the *expected* return on plan assets is to be based on the expected long-term rate of return on plan assets and the market-related value of plan assets. As noted below, the net periodic pension cost includes a credit equal to the excess of the actual return on plan assets over the expected return on plan assets. Thus while the net periodic pension cost appears to include the actual return on plan assets, the effect of this offsetting credit is that the net periodic pension cost actually includes only the expected return on plan assets. This enables the net periodic pension cost to be predicted at the beginning of the year, before the actual return on plan assets is known.

The actual return on plan assets is a negative element, to be subtracted from the positive elements of the net periodic pension cost. If the interest rate used for the expected return on plan assets (a negative element) is the same as the discount rate applied to the projected benefit obligation (a positive element), the net effect of these two elements of net periodic pension cost is that interest will be charged on the unfunded portion of the projected benefit obligation, just as interest on the unfunded liability is required under Opinion 8. But the two interest rates may differ.

Statement 87 applies to unfunded nonqualified plans, such as excess benefit plans, as well as to funded plans. For an unfunded plan, of course, there is no actual return on plan assets.

**4. Amortization of Unrecognized Prior Service Cost.** A new pension plan usually credits benefits based on service prior to the effective date, creating a projected benefit obligation on the effective date. Plan amendments frequently increase the projected benefit obligation. Such an increase is termed 'prior service cost.' Occasionally an amendment can decrease the projected benefit obligation; in this case the prior service cost will be negative. Amounts of projected benefit obligation established before the effective date of Statement 87 are not treated as a prior service cost, but are accounted for separately.

730  **Section V · Funding and Accounting**

The entire prior service cost is not included in the net periodic pension cost in the year that it is created. Rather, it is amortized over the expected future period of service of present active participants expected to receive benefits under the plan.[15] By using rates of death, retirement, disability, and other forms of withdrawal, the actuary can project the periods of service expected to be worked in future years by present participants.

For example, for 1,000 participants expected to receive benefits under the plan at the beginning of a year when a prior service cost is created, the actuary may project that 980 years of service will be credited during that year, that 940 will be credited the following year, and so forth. Totaling these projections for all future years, the actuary may determine that the total number of years of service to be credited in all future years is 15,000 years of service. Of these 15,000 years, 980, or 6.53 percent of them, will be credited during the first year. Therefore 6.53 percent of the prior service cost would be included in the net periodic pension cost for the first year as amortization of unrecognized prior service cost. The next year the amount of unrecognized prior service cost included in the net periodic pension cost would be 6.27 percent (940/15,000) of the amount of prior service cost that was determined at its creation.

This complex approach to amortization can be avoided by adopting an alternative approach that amortizes the prior service cost more rapidly, such as straight-line amortization over the average remaining service period. In the above example, the average remaining service period is 15 years (15,000/1,000); thus one-fifteenth of the prior service cost could be treated as the amortization amount each year.

Note that the amortization amount does not include any interest. Interest on the prior service cost has already been included as part of the interest cost based on the total projected benefit obligation described earlier.

**5. Gain or Loss (Including the Effects of Changes in Assumptions) to the Extent Recognized.** For purposes of Statement 87, a gain or loss is a change in the amount of projected benefit obligation or plan assets resulting from actual experience different from that expected or from changes in assumptions. This differs from funding requirements and traditional actuarial practice, which do not treat changes in assumptions as gains and losses.

The gain or loss component included in net periodic pension cost consists of two parts, (1) the difference between the actual return on plan assets and the expected return, and (2) the amortization of the unrecognized net gain or loss from previous years. The first of these, the difference between the actual return on plan assets and the expected return, has the effect of removing from the net periodic pension cost the current year's gain or loss on assets that is included in the component for actual return on plan assets.

The second part of the gain or loss component, the amortization of the unrecognized net gain or loss from prior years, is determined in several steps. The total net gain or loss

---

[15] If all or almost all of the participants are inactive, their remaining life expectancy is used instead of the remaining service period for this purpose and other requirements of Statement 87.

for all prior years after the effective date of Statement 87 is adjusted by the amount of such gain or loss recognized in prior years. This unrecognized net loss (negative if a net gain) is then increased by the excess of the fair value of plan assets over the market-related value of plan assets (a negative amount if the fair value is smaller), thus deferring asset gains not yet included in the market-related value. The amortization amount to be included in the gain or loss component can be based on this adjusted unrecognized net gain or loss, but it is permissible to first reduce its magnitude by 10 percent of the larger of the projected benefit obligation or the fair value of plan assets, basing the amortization on the excess, if any. If amortization is required, this net amount is divided by the average remaining service period of active employees who are expected to receive plan benefits to obtain the amortization amount included in the gain or loss component of the net periodic pension cost. The amortization amount of the gain or loss component is positive if there is a net loss and negative if there is a net gain. With this process of determining the gain or loss component, the recognition of gains and losses is substantially deferred and cost fluctuations are smoothed out between years.

**6. Amortization of Unrecognized Obligation at the Date of Initial Application of Statement 87.** At the beginning of the first year to which Statement 87 applies, there exists an unrecognized obligation equal to the excess, as of the end of the previous year, of (a) the pension benefit obligation over (b) the fair value of plan assets plus any accrued pension cost included in the liabilities of the employer's balance sheet (or less any asset for prepaid pension cost included in the employer's balance sheet). The component for amortization of unrecognized obligation is determined by dividing this difference by the average remaining service period for active employees expected to receive plan benefits. The employer may elect to use 15 years if this is longer than the average remaining service period. The component for amortization of unrecognized obligation at the date of initial application of Statement 87 is a positive element of the net periodic pension cost if the initial projected benefit obligation exceeds the fair value of plan assets adjusted for balance sheet accruals; otherwise it is a negative element of the cost.

### F. Recognition of Liabilities and Assets

The amount of employer contributions to the plan will ordinarily differ from the net periodic pension cost. The cumulative difference between these two is recognized on the employer's balance sheet as an asset for prepaid pension expense if employer contributions exceed the net periodic pension cost, and as a liability for unfunded accrued pension cost if less.

An additional liability may be required on the employer's balance sheet if there is an 'unfunded accumulated benefit obligation' which means the excess, if any, of the accumulated benefit obligation over the fair value of plan assets. This additional liability equals the excess, if any, of the unfunded accumulated benefit obligation over the unfunded accrued pension cost, increased by any asset for prepaid pension expense. Thus the combination of this additional liability and any prepaid pension expense or unfunded

accrued pension cost produces a net liability on the employer's balance sheet that is equal to the unfunded accumulated benefit obligation. Any such additional liability is generally offset by adding an 'intangible asset' of equal amount to the balance sheet.[16]

## G. Disclosures

Statement 87 describes extensive disclosures required in the employer's financial statements regarding the employer's pension plans, their funding, and their accounting. The net periodic pension cost must be broken down between the service cost component, the interest cost component, the actual return on assets for the period, and the net total of other components. All three measures of benefit obligation must be shown. A detailed schedule is required reconciling the funded status of the plan with amounts reported in the employer's balance sheet. Statement 87 provides examples of such disclosure statements.

## H. Employers with Two or More Plans

If an employer sponsors more than one defined benefit plan, the net periodic pension cost, asset, and liability items for the employer's financial statement must be calculated separately for each plan. The employer's financial statement combines amounts for all such plans in the statement, but it does not offset them. Thus an excess of plan assets over the accumulated benefit obligation for one plan cannot reduce the unfunded accumulated benefit obligation of another plan, and the prepaid pension cost of one plan does not offset the unfunded accrued pension cost of another. For purposes of the required disclosures, all of an employer's defined benefit plans may be aggregated or they may be aggregated in groups to provide the most useful information. However, plans with unfunded accumulated benefit obligations may not be aggregated with other plans for purposes of the required schedule reconciling the funded status of the plan with amounts reported in the employer's balance sheet.

## I. Defined Contribution Plans

Statement 87's requirements for defined contribution pension plans are quite simple: the net periodic pension cost equals the required employer contributions to the plan. Any difference between the net periodic pension cost and the actual employer contributions results in either a liability for unfunded accrued pension cost or an asset for prepaid pension cost, the same as under defined benefit plans. The disclosure requirements for defined contribution plans are brief and simple.

## J. Multiemployer Plans

The requirements for accounting for the costs of a multiemployer plan in the financial statement of a contributing employer are usually comparable to the requirements with respect to defined contribution plans. However, if it is either probable or reasonably

---

[16] However, the intangible asset may not exceed the unrecognized prior service cost plus the unrecognized net obligation arising before the effective date of Statement 87. If the additional liability exceeds this amount, the net worth on the balance sheet will show a decrease.

possible that the employer will withdraw from a multiemployer plan with resulting withdrawal liability, other requirements apply (see Chapter 29 for a description of withdrawal liability under multiemployer plans).[17]

### K. Other Rules and Effective Dates

Special rules apply to non-U.S. pension plans and to a variety of special situations not described herein. Statement 87 is generally effective for financial statements for fiscal periods beginning after December 15, 1986. But for a business whose securities are not publicly traded and that does not sponsor any defined benefit plan with more than 100 participants, the Statement is effective for fiscal periods beginning two years later. That later effective date also applies to foreign plans, and to all plans with respect to the requirement that any unfunded accumulated benefit obligation be shown on the balance sheet.

## FASB Statement 88: Plan Terminations, Settlements, Curtailments, and Termination Benefits

Under FASB Statement No. 88, an employer's financial statements are required to indicate the effect of certain special events in defined benefit plans, such as a plan termination or curtailment, settlements of benefit obligations by purchase of annuities or lump-sum payment, and the provision of certain termination benefits. Statement 88 describes the amount of gains and losses that must be recognized immediately in the employer's financial statements for these events. These requirements supplement the requirements of Statement 87 and become effective at the same time as Statement 87. Thus a decision to adopt Statement 87 early will automatically trigger the early adoption of Statement 88.

### Settlements

Statement 88 defines a settlement as 'a transaction that (a) is an irrevocable action, (b) relieves the employer (or the plan) of primary responsibility for a pension benefit obligation, and (c) eliminates significant risks related to the obligation and the assets used to effect the settlement.' A settlement will occur if a plan's obligation to provide benefits is discharged by paying a lump-sum distribution or by purchasing a nonparticipating annuity contract.

If a participating annuity contract is purchased, this constitutes a settlement only if the employer is no longer subject to all or most of the risks and rewards associated with the annuity. But if a purchase of a participating annuity is a settlement, the portion

---

[17] Requirements in this case are determined by FASB Statement No. 5.