UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

LAWRENCE G. RUPPERT and

THOMAS A. LARSON

On behalf of themselves and on behalf of
All others similarly situated,

                    Plaintiffs,

    v.

ALLIANT ENERGY CASH BALANCE
PENSION PLAN,

                    Defendant.

Case No. 3:08-CV-00127-bbc

Judge Barbara B. Crabb
Magistrate Judge Stephen L. Crocker

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE
PROFFERED REPORTS AND TESTIMONY OF
DAVID GODOFSKY AND IAN ALTMAN**

Plaintiffs hereby submit their reply brief in support of their motion to exclude the proffered reports and testimony of defense experts David R. Godofsky and Ian H. Altman. *See* Doc. 260 and brief in opposition to Defendant's motion for summary judgment (Doc. 259), plaintiffs' proposed factual findings ("Pls. PFOF") (Doc. 228), responses to Defendant's proposed findings ("Pls. Resp. to Def. PFOF") (Doc. 256), statement of additional proposed findings of fact ("Pls. Add'l FOF") (Doc. 257), and response to Defendant's additional proposed findings of fact ("Pls. Resp. to Def. Add'l FOF") (Doc. 276) incorporated by reference. As shown below, Defendant's opposition brief (Doc. 270) merely confirms that the challenged portions of Mr. Godofsky's and Mr. Altman's reports and testimony are indeed inadmissible or, to the extent admitted, are entitled to no or virtually no weight.

I.  **Mr. Godofsky's Opinion As to How this Court Should Interpret Congress' Intent in Using the Words "Interest Rate" (Within the Defined Term "Applicable Interest Rate") in the Case of Any Cash Balance Plan that Ties its Interest Crediting Rate in Part to the Return of the Plan's Assets is an Inadmissible Legal Opinion.**

Plaintiffs' contention with respect to the challenged portions of Mr. Godofsky's report and transcript is that while Defendant has every right **via argument** to have the Court consider Mr. Godofsky's rococo interpretation of ERISA § 205(g), 29 U.S.C. 1055(g); IRC § 417(e) ("417(e)"), it has no right, even with the Court sitting as both judge and jury, to bolster its argument **via evidence** with the opinion of a lawyer even if he is also an actuary.  *See* Doc. 260 at 1-2; Pls. SJ Opp. Br. at 3 n. 1; Pls. PFOF ¶¶ 47-100; Pls. Resp. to Def. PFOF ¶¶ 38a-71; Pls. Add'l FOF ¶¶ 1-13.  It is Mr. Godofsky's thesis that because the Alliant Plan's interest crediting rate is tied to the rate of return on invested assets, 417(e) required that in determining each participant's accrued benefit for purposes of calculating his or her lump sum, the Plan assume its rate of return (its "interest rate," according to Mr. Godofsky) equaled the 417(e) rate, with the result that participants' cash balance accounts should have been projected at the greater of: (i) 4% or (ii) 75% of *the 417(e) rate,* with the result that participants are owed nothing and were indeed lucky that they were even paid lump sums equal to their notional account balance.  *See* Godofsky 10/23/09 Rep. ¶ 14.

Defendant has two basic responses to Plaintiffs' motion to exclude the challenged portions of Mr. Godofsky's report.[1]  One, Defendant suggests that Mr. Godofsky's opinions are not legal opinions.  *See* Def. Opp. at 4-5.  Two, Defendant argues to the extent they are legal opinions they are admissible anyway.  *Id.* at 5-6.  Both arguments are without merit.

---

[1] Defendant's assertion that "[g]iven Godofsky's thirty years of actuarial experience" he is "certainly entitled to give his actuarial opinion as to how to calculate a present value, what is meant actuarially by interest rate and present value, how an actuary. . .applies these terms, why Maxam and Deutsch's so-called expert opinions are flawed, etc." is a red herring.  Def. Opp. at 5-6 n. 2.  Plaintiffs do not challenge the admissibility of Mr. Godofsky's criticisms of Plaintiffs' experts, but rather his attempt to present legal opinions as actuarial ones, *see* Pls. Mtn. at 1-2.

2

Beginning with the nature of Mr. Godofsky's opinions, Defendant's discussion of those opinions in its opposition brief alone confirms that Mr. Godofsky is doing nothing more nor less than telling the Court how he thinking the Court should interpret the words "interest rate" (inside the already-defined term "applicable interest rate") in 417(e). *See* Def. Opp. at 4 ("Mr. Godofsky used his actuarial knowledge to form his *opinions about the laws at issue* in this case"); *id.* at 5 ("Mr. Godofsky appl[ied] his specialized knowledge to *interpret the term 'interest rate'*") (emphasis added).

Moreover, although Mr. Godofsky claims that his opinion is actuarial and not legal, *see* Doc. 190, Godofsky 10/23/09 Rep. at ¶¶ 11-12, at every turn his report is unmistakably advancing an interpretation of the statute. *See, e.g.,* Godofsky 10/23/09 Rep. ¶ 35 (arguing that "[t]he definition of 'interest rate' "compels the result that the whipsaw calculation use the statutory interest rate for the expected rate of return of the Plan"); *id.* ¶ 17 (arguing that it is a "statutorily mandated actuarial assumption[]"that the trust's returns equal the 417(e) rate in calculating the accrued benefit for purposes of calculating lump sums); *id.* § B (asserting that ERISA and the Code "Mandate[]" "What the 'Interest Rate' is"); *id.* ¶ 32 ("the statutory mandate is . ..applicable" when the plan's interest crediting rate is tied to the return on trust assets); *id.* ¶ 33 ("the statutory rate does specify the assumed rate of return of the Plan's trust fund, which by definition is the interest rate . . . the statutory rate tells you what the Plan is assumed to earn for the present value calculation"); *id.* ¶ 34 (to calculate the accrued benefit, "one starts with the statutorily mandated assumption that investment returns will be equal to the statutory rate"); *id.* ¶ 34 ("the statute requires that future interest credits be projected at [the 417(e) rate] for [calculating the accrued benefit]"); *id.* ¶ 35 ("[t]he definition of 'interest rate' compels the result that the whipsaw calculation use the statutory interest rate for the expected rate of return of the Plan. This is because

the term 'interest rate' means the rate that is earned on assets that are invested"); *id.* ¶ 44 ("the statutory interest rate must be the rate that the plan is expected to earn" for purposes of calculating the accrued benefit prior to discounting to present value); *id.* ¶ 47 ("It follows logically that because the statutory interest rate is the mandated projection of the Plan's future rate of return, then if the Plan's interest crediting rate is calculated from the actual rate of return, the statutory rate must be used to determine the projected interest crediting rate").

It is empty rhetoric for Defendant, without citation, to accuse Plaintiffs of "argu[ing] that Mr. Godofsky's opinions should be converted into legal opinions," Def. Opp. at 3, when there is obviously no conversion necessary; his report is pure unadultered legal argument, advocating Mr. Godofsky's own, peculiar statutory interpretation of the words "interest rate" in the case of any cash balance plan that ties its interest crediting rate in part to the returns on the plan's assets. It is equally fantastical for Defendant to argue that "the issues on which Mr. Godofsky opines do not, *in and of themselves*, determine the outcome of the instant matter." Def. Opp. at 5 (emphasis in original). If Mr. Godofsky's reading of 417(e) is adopted, this case is over.

Additionally, Defendant's summary judgment briefs belie the assertion made here, namely, that Mr. Godofsky's opinion is actuarial in nature and adduced solely for some only vaguely-defined "actuarial" purpose. For example, in its opening brief in support of its motion for summary judgment Defendant expressly states that "Mr. Godofsky opines that. . .the law mandates the use of the 30-year Treasury rate as the Plan's 'interest rate'. . .when computing a present value," *see* Def. SJ Br. at 1, and that "the statutory interest rate – in this case, the 30-year Treasury rate – specifies the assumed rate of return of the Plan's assets when calculating a present value for lump sum purposes." *Id.* at 11. In its opposition to Plaintiffs' motion for summary judgment Defendant again invokes Mr. Godofsky's argument. *See, e.g.,* Def. SJ Opp.

4

at 9 (the IRC Section 417(e)(3). . .rate must be utilized as the interest rate for purposes of calculating minimum permissible lump sum payouts"). In its summary judgment reply brief, Defendant once again puts forth the exact *legal* argument that Godofsky sets forth in its expert report: that the so-called actuarial definitions of "interest rate" and "present value" should apply when interpreting the respective terms "applicable interest rate" and "present value" under a statute, IRC § 417(e). Def. Reply Brief at 3-5.

In the alternative Defendant argues that to the extent Mr. Godofsky's opinions are legal ones, they are still admissible because "[c]ourts have held that when the law at issue is unusually complex—as it is here—legal conclusions may be drawn by an expert to aid the trier of fact in making a determination on the ultimate issue. where an issue at law is "unusually complex. . .legal conclusions may be drawn by an expert to aid the trier of fact in making a determination on the ultimate issue." Def. SJ Opp. at 6. In support, Defendant cites two cases from outside of this Circuit, *Proujanksy v. Blau*, 1999 U.S. Dist. LEXIS 2576, * 10 (S.D.N.Y. Mar. 4 1999) and *U.S. v. McDade*, 1995 U.S. Dist. LEXIS 11640, *9 (E.D. Pa. Aug. 4, 1995).[2] Neither case remotely supports the proposition that it is permissible to admit an expert's opinion on the ultimate issue of how to construe the words used in an Act of Congress.[3]

---

[2] Defendant does not mention or distinguish any of the Seventh Circuit authorities Plaintiffs cite in their opening brief concerning Mr. Godofsky. *See* Pls. Mtn. at 1-2. The sole Seventh Circuit case it cites, *Joy Recovery Tech v. Chang*, 286 B.R. 54 (Bankr. N.D. Ill. 2002), to the extent relevant, supports Plaintiffs' position. In *Joy,* the court permitted an accounting expert, with reference to statutory language, to apply accounting rules to Joy's financial reports and expressly said it would not allow such an expert to make a legal determination of what constitutes insolvency. *Id.* at 68; *accord id.* at 67 ("assistance offered by an expert does not include telling the factfinder how it should rule. Hence experts are not allowed to give legal conclusions."); *id.* at 68 ("[l]eft unchecked, the expert could supplant the judge's role of determining the law. Such testimony is objectionable because it invades the province of the trial judge") (citations omitted).

[3] In *Proujanksy,* which involved a claim against a defined benefit plan trustee for breach of fiduciary duty that court did not find that the opinions allowed were legal ones, but simply found (in answer to its own *sua sponte* question of admissibility) that "it is *arguable* that [the issues] pose questions of law which the Court can resolve without the benefit of. . .expert opinion. . .the subject is sufficiently esoteric to persuade

Finally, Defendant quotes out of context Plaintiffs' counsel's statement that "actuaries, *while they're not lawyers*, *sometimes* **sound** in their daily work that what they're doing is applying a very complicated code to calculations and saying this is right." Pearson 12/10/09 Tr. (Doc. 165) 15:13-16 (emphasis added). Nowhere does Plaintiffs' counsel state that actuaries can conduct full-fledged statutory interpretation.[4]

## II.     Mr. Altman's Proffered Report and Transcript Portions Should Be Excluded.

Plaintiffs' opening brief showed that Defendant could not satisfy its burden under Rule 702 and *Daubert* with respect to Mr. Altman's opinion that the 30-year Treasury rate was an unbiased and reasonable estimator of future interest credits because Mr. Altman not only assumed that Alliant wrote the projection rate into the plan document after performing an actual, *bona fide* estimate of future interest credit (solely because, Mr. Altman said, he assumes plan sponsors act in good faith) but more importantly because Mr. Altman's conclusion was based on an overly simplistic method that he applied in an equally unrigorous fashion. In particular, Plaintiffs showed that Mr. Altman's opinion is based on him doing nothing more than looking at a handful of outcomes of actual experience to see how often the 30-year Treasury rate was higher

---

me. . .that these opinions may be helpful." *Proujanksy v. Blau,* 1999 WL 124457, *3 (S.D.N.Y. March 8, 1999) (emphasis added). *McDade* involved a criminal trial of a congressman for violating certain ethics rules; that court allowed experts to testify about those ethics rules because it felt that "[t]estimony concerning the general content of ethics and disclosure rules, and the extent to which the average congressman is aware of the content of those rules, will assist the jury in assessing [Defendant's] defense that he was not aware that his acceptance of the gifts at issue was impermissible." *U.S. v. McDade,* 1995 WL 476230, *3 (E.D. Pa. Aug. 7, 1995). The *McDade* court, however, emphasized that this was permissible because the defendant was not being charged with violating those ethics and disclosure rules. *Id.*

[4] Defendant is even further afield when it cites this snippet of a two-day deposition, as Plaintiffs' expert expressly stated that he is not an attorney but was trained in law to the extent needed to become an enrolled actuary and says that IRS Notice 96-8 ("Notice 96-8") is authoritative based on his reading of *Berger* and discussions with Plaintiffs' counsel, and lastly states that Notice 96-8 is guidance on how to implement the law under ERISA. *Id.* 84:7-85:3. Again, nowhere does he say that as an actuary he has the authority to conduct full-fledged statutory interpretation of either ERISA or the IRC.

6

and how often it was lower than the Plan's actual interest crediting rate and then, seeing that they were evenly divided (yet ignoring the magnitude of differences in each year), he declares that, in his opinion, participants have no basis to complain about receiving a benefit projected at the 30-year Treasury rate. Pls. SJ Opp. at 18.[5]

Without ever joining issue with Plaintiffs' core contentions, Defendant responds by asserting that Mr. Altman "has shown that his methods are generally accepted and supported by the actuarial community," including the American Academy of Actuaries, the institution which promulgates the Actuarial Standards of Practice ("ASOP"). *See* Def. Opp. at 7 (citing Mr. Altman's report at page 2). This is absurd: Mr. Altman did not show anywhere in his report that any of his methods are generally accepted: on page 2 of his report he merely stated in his introduction that he relied on generally accepted actuarial methods that he adheres to when advising his clients and stated that his work adheres to the ASOP promulgated by the American Academy of Actuaries. *See* Altman 10/23/09 Rep. (Doc. 194) at 2. Mr. Altman gave no indication in his report or deposition testimony that his approach in this case came directly from any ASOP or was reviewed by the American Academy of Actuaries. *Id.* Additionally, neither Defendant nor Mr. Altman connects a single component of Mr. Altman's methodology – (i) determining the meaning of "unbiased"; (ii) counting up the number of times that actual experience was higher or lower than the selected estimator; and (iii) evaluating whether actual

---

[5] In its opposition, Defendant omits any discussion of Plaintiffs' relevancy/hindsight argument based on its odd assertion that "Plaintiffs attack *only* the reliability of Mr. Altman's opinions, not the relevancy of them." *See* Def. Opp. at 6 n.3 (emphasis in the original). However, in their motion to exclude, Plaintiffs clearly stated that Mr. Altman's use of hindsight evidence "is not material to the question of the rate at which future interest credits should have been projected," *see* Pls. Mtn to Exclude at 2, and in their opposition to Defendant's motion for summary judgment, which Plaintiffs incorporated by reference in their motion to exclude, Plaintiffs discussed at length Mr. Altman's improper hindsight approach, *see* Pls. SJ Opp. Brief (Doc. 253) at 16-18. For Plaintiffs' additional arguments on that score, *see* Plaintiffs' discussion of the Court of Appeals decision in *Hickerson v. Velsicol Chemical Corp.*, 778 F.2d 365 (7th Cir. 1985) in Pls. SJ Reply Brief (Doc. 279) at 6-7 (discussing inappropriate use of hindsight to approximate interest earned on participants' accounts).

experience was "relatively close" to the selected estimator – to any ASOP or any other generally accepted method supported by the actuarial community. *See Clark v. Takata Corp.,* 192 F.3d 750, 759 n.5 (7th Cir. 1999) (expert opinion must be based upon "recognized scientific method and [must be] reliable and relevant under . . . *Daubert*").

Defendant argues that Mr. Altman "described at length the methodology and assumptions he used to form his opinions," Def. Opp. at 7, but this is a red herring:  Plaintiffs do not challenge Mr. Altman's opinions on the ground that they are unexplained.  Plaintiffs challenge instead that his method is one that a 12-year old – *i.e.,* a non-actuary, non-expert – could have come up with and applied with as much rigor as did Mr. Altman, who irrationally jettisoned one year's data (2003) and uses a patently invalid rationale for discarding another year's inconvenient data (2006).  Pls. SJ Opp. at 18-22.[6]

Plaintiffs shown on pages 14-23 of their opposition brief that Mr. Altman's application of his methodology was as unreliable as his methodology.  As previously stated, Mr. Altman's application of his method suffers from numerous problems, all of which provide clear evidence that his expert report is unreliable.  *First*, Mr. Altman ignores evidence prior to 1998 and thereafter, including historical and stochastic evidence, that the Plan's interest credit greatly exceeded the 30-year Treasury rate over time.[7]  No competent, objective expert would ignore

---

[6] Additionally, it is a red herring for Defendant to pretend that Plaintiffs are challenging the admissibility of Mr. Altman's criticisms of Plaintiffs' experts.  *See* Def. Opp. at 7 ("disclosed the underlying technical bases for his criticisms of plaintiffs' experts, Altman Rep. 10/23/09 (docket # 191) at 15-21").  Plaintiffs are only challenging Section III of Mr. Altman's report, spanning from page 9 to page 12, in which he declares that in his opinion, the 30-year Treasury rate was a reasonable and fair selection as an interest crediting rate.  *See* Altman 10/23/09 Rep. at 9.  Thus, Defendant's argument that Mr. Altman's had reasoned analysis because it was 22 pages long, *see* Def. SJ Reply Brief (Doc. 273) at 17, is irrelevant.

[7] Defendant argues that trust returns for the prior plans are "irrelevant" based on the fact that they were not cash balance plans and invested differently.  *See* Def. SJ Reply Brief at 13.  However, the IES and WP&L plans both had target asset allocations comparable to the Plan's, *see* Pls. Resp. to Def. Add'l FOF (Doc. 276) ¶ 16 (quoting 1998 Board of Directors presentation with proposed Alliant Plan asset allocation was 65% equity, 30% bond, 5% cash which was "the same [then] in place currently for IES and a bit

these pieces of available evidence in the way that Mr. Altman does here. *See, e.g., MCI Communications Corp. v. A.T. & T.*, 708 F.2d 1081, 1165 (7th Cir. 1983). *Second*, Mr. Altman does not address the fact that his data set is very small, including only 8 or 9 years, depending on which stage of analysis he is in. Thus, Mr. Altman's opinion is of little value because it is not based on sufficient data upon which it was reasonable to rely for his conclusions. *See* Fed. R. Evid. 702-703. *Third*, Mr. Altman does not adequately explain why he chose to manipulate the data in the way he did. Defendant quotes Mr. Altman as saying that he omitted 2003 because there "is precedent in statistical methods for at least considering either deleting or dampening the effective outliers." Def. SJ Reply Brief at 14. But Mr. Altman could provide no authoritative support for removing one (arguably two, if 2006 is included) data point out of a data set of only eight or nine points for this purpose. *See* Altman 11/12/09 Tr. (Doc. 185) 329:19-331:1 (unable to cite any authority for the use of 8 data points and eliminating one or two of them as a statistically acceptable basis for projecting returns in any kind of portfolio). Mr. Altman also substituted a 4% interest crediting rate for 2006 instead of the actual Plan interest crediting rate that year of 9.6% based on the fact that the Pension Protection Act of 2006 was passed in that year, which purportedly cut off his analysis. Nonetheless, Mr. Altman admitted that the Pension Protection Act had no impact on determining the actual 2006 interest crediting rate, *i.e.,* what participants who were participants in the Plan throughout 2006 would have actually received in their accounts. *See* Altman 11/12/09 Tr. 252:13-17 ("Nothing changed" in 2006 that would have affected what participants actually received in their account balance); *id.* 254:5-15 (Plan

---

higher than the [then-]current allocation [of] 60% for WP&L"). Additionally, the fact that the Plan's own actuary provided Alliant with analyses of the average hypothetical interest credits during those periods based on such historical returns refutes the notion that such trust returns are "irrelevant." *See* Pls. Reply to Def. Resp. to Pls. PFOF (Doc. 277) ¶ 87 (citing to Towers Perrin 30(b)(6) deposition testimony stating that Towers Perrin provided such historical analyses to Alliant).

participant would receive the actual 2006 interest crediting rate and not 4% in his or her account).

Defendant goes on to say that "[w]hat actuaries do is use their professional judgment to measure predicted rates against actual rates, comparing the two" citing ASOP Introduction § 4.5.3.  *See* Def. Opp. at 8.  However, the section that Defendant cites says nothing about predicting rates against actual rates and then comparing the two – that section is entirely about professional judgment.  *See* Def. Ex. 1 at Introduction § 4.5.3.  But Plaintiffs do not begrudge Mr. Altman's "professional judgment" – that is complete misdirection on Defendant's part.  Plaintiffs take issue instead with the fact that what Mr. Altman does on pages 9-12 of his expert report is not actuarial – it is a simplistic hindsight-based counting exercise devoid of any proper numerical analysis.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, such other reasons as may appear to the Court and that Plaintiffs have adduced or may elsewhere adduce, Plaintiffs respectfully request that the instant motion be granted.

Respectfully submitted,

  /s/*Andrew Carter*
Eli Gottesdiener
Andrew P. Carter
Steven D. Cohen
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Email:     eli@gottesdienerlaw.com
Telephone:  (718) 788-1500
Telecopier:  (718) 788-1650

*Counsel for Plaintiffs and the certified Subclasses*

## CERTIFICATE OF SERVICE

      I, Andrew Carter, an attorney, do hereby certify that on April 5, 2010, I caused to be electronically filed the foregoing using the ECF system which will send notification of such filing to the following:

Mark Casciari
Ronald J. Kramer
Amanda A. Sonneborn
Samuel Schwartz-Fenwick
Ronald L. Lipinski
Seyfarth Shaw LLP
131 South Dearborn Street Suite 2400
Chicago, IL 60603-5577
Telephone: (312) 460-5000
Fax: (312) 460-7000

                                                /s/ *Andrew Carter*